**T. J. RICHARDS, Jr., Appellant,**

v.

**M. A. RICHARDS, Appellee.**

**No. 365.**

Court of Civil Appeals of Texas. Tyler.

June 13, 1968.

Rehearing Denied July 18, 1968.

Key, Carr, Carr & Clark, Aubrey J. Fouts, Lubbock, for appellant.

W. S. Heatly, Paducah, Jack W. Watson, Stamford, for appellee.

MOORE, Justice.

This is an appeal from a judgment of partition. Plaintiff, M. A. Richards, brought the suit seeking a partition of the estate of his deceased parents, T. J. Richards and Mrs. F. M. Richards, naming all the remaining heirs as party defendants. Plaintiff alleged that T. J. Richards died, intestate, in 1925 and Mrs. F. M. Richards died, intestate, 1952, and prayed for a division and distribution of the estate. Trial was before the court, without a jury, and resulted in a judgment decreeing a partition and distributing the estate among the various heirs. Appellant, T. J. Richards, Jr., a grandson of Mr. and Mrs. Richards, perfected this appeal.

Although the Richards' estate consisted of a vast amount of real property, personal property, and bank accounts, this appeal is limited to the single question of whether the trial court erred in the distribution of certain funds in a bank account known as the "T. J. Richards Sons Account."

The record shows, without dispute, that at the time of the death of Mrs. F. M.

Richards, the "T. J. Richards Sons Account" was a partnership account, owned and operated by Mrs. F. M. Richards and her two sons, M. A. Richards and D. E. Richards. It is also without dispute that at the time of her death, her sole and only heirs were her two sons, M. A. Richards and D. E. Richards, and a grandson, T. J. Richards, Jr., appellant herein. It is likewise undisputed that each of the three surviving heirs as aforesaid is entitled to $\frac{1}{3}$ of whatever interest Mrs. F. M. Richards owned in the partnership account at the time of her death. The primary dispute between the parties resolves itself into the question of the extent of ownership, owned by Mrs. Richards in the partnership account, at the time of her death.

The T. J. Richards Sons Account was originally established in 1925, at the time of, or immediately after, the death of T. J. Richards. At the time of his death, T. J. Richards was survived by his wife, Mrs. F. M. Richards and four sons, W. Q. Richards, John J. Richards, M. A. Richards and D. E. Richards. Appellant's father, W. Q. Richards, died testate in 1929 leaving all of his propery, including his interest in this bank account, to his wife. Thereafter, it appears that Mrs. F. M. Richards and her remaining sons purchased W. Q. Richards' interest from his surviving wife. Thereafter, the bank account continued to be operated by Mrs. Richards and her three remaining sons as a partnership account. In 1947, John J. Richards died testate, leaving a life estate and all of his property to his two surviving brothers, M. A. Richards and D. E. Richards, with the remainder to certain of his nephews. After his death, Mrs. Richards and her two remaining sons continued to operate the account as a partnership account. If there was ever any agreement between Mrs. Richards and her sons as to their respective share of the ownership in the account, same is not reflected by the record. The only evidence which would, in any way, indicate how the account was handled was testimony showing that prior to the death of Mrs. F. M. Richards, the parties occasionally withdrew funds from the account and divided them, 50% to Mrs. Richards; 25% to M. A. Richards and 25% to D. E. Richards. At the time of the death of Mrs. F. M. Richards, the account had a balance of approximately $82,000.00.

On May 13, 1967, a hearing was held for the purpose of determining the proper distribution of the funds in the various bank accounts of the estate. Appellant appeared at this hearing and contended that at the time of her death, Mrs. F. M. Richards owned $\frac{4}{7}$ of the T. J. Richards Sons Account. He contended, therefore, that he was entitled to a $\frac{1}{3}$ of her $\frac{4}{7}$ interest, or $\frac{4}{21}$ of the entire account. M. A. Richards and D. E. Richards denied that her estate owned $\frac{4}{7}$ of the account. They contended that since there was no agreement as to the ownership, Mrs. Richards would, theoretically, at least, be entitled to only $\frac{1}{3}$ of the account. They further contended that for several years, they had deposited certain funds in the account which had been received from the life estate willed them by their deceased brother and by reason of these deposits, their percentage of the ownership was increased and that of their mother had correspondingly decreased. After a lengthy argument between the attorneys, the parties finally made the following announcement:

"HON. W. S. HEATLY: We have reached an agreement, Your Honor, and if it please the Court I will endeavor to state what has been agreed to as I understand it. Mr. Arnold, you go ahead if you have something worked out there.

"MR. ARNOLD: On the large account, now, we have come to this conclusion, Judge, take off $750.00 of M. A. portion of the $41,000.00.

"HON. W. S. HEATLY: No, take the $750.00 off the one-half that belongs to D. E. and M. A. Is that what you are talking about, Jan?

"HON. JAN FOUTS: Yes sir. That's what we agreed to.

"THE COURT: In other words, as I understand it, you are going to take $750.00 off the top one-half that belongs to D. E. and M. A. Richards. They have $41,200 and some odd dollars, and you are going to take $750.00 off that.

"HON. W. S. HEATLY: Yes sir. Then divide the remainder in this manner: 7/21 to Mr. D. E.; 7/21 to Mr. M. A.; 4/21 to T. J., Jr.; and 3/21 to the life estate.

"HON. JAN FOUTS: In other words, it will be just as it was with the exception of the $750.00 which will come out of the half that would ordinarily be divided between Mr. D. E. and Mr. M. A."

The court then announced that judgment would be rendered in conformity with the agreement.

Thereafter, on June 9, 1967, another hearing was conducted for the purpose of disposing of other matters relating to the distribution of the estate and the discharge of the receiver. Appellant appeared at this hearing and announced that he would not abide by the compromise agreement entered into at the previous hearing. He contended that he was mistaken as to the effect of the previous agreement and had since concluded that he was entitled to a substantially greater portion of the account than he had previously agreed to accept. He advised the court that if judgment was to be rendered upon the basis of the previous stipulation, he would appeal. At the conclusion of the hearing, the court again announced judgment which was identical in every respect with the terms and conditions of the previous stipulation between the parties. Appellant objected and again stated that he would appeal. Immediately thereafter, while the court was still in session, the question arose as to whether or not the receiver was to draw checks upon the various accounts and distribute the same in accordance with the judgment theretofore announced. The court inquired as to whether or not any of the parties had any objection to the distribution of the entire estate, stat-

ing that if any party objected, no disbursements of any type would be made. Appellant registered no objection but again stated that he intended to appeal from that portion of the judgment relating to the T. J. Richards Sons Account. Thereupon, in the presence of the court, the receiver distributed checks to the various parties for their interest in the various accounts in accordance with the judgment of the court. The receiver delivered appellant a check drawn upon the T. J. Richards Sons Account for his share of the account in accordance with the judgment, including the sum of $750.00 which was deducted from the portion of the account awarded to M. A. Richards and D. E. Richards.

Formal judgment was signed and entered on August 19, 1967. Thereafter, appellant properly perfected this appeal, however, he did not supersede the judgment. After appeal had been perfected, appellant dismissed as to appellee, D. E. Richards.

By numerous points of error, appellant seeks a reversal on the grounds that there is no evidence, or at least insufficient evidence, to support the judgment partitioning the T. J. Richards Sons Account in the manner adopted by the court and in the alternative contends that the undisputed evidence shows, as a matter of law, that the judgment should be reversed and rendered in his favor for a substantially greater amount than was awarded him by the court.

By an appropriate counter point, appellee asserts the appellant is estopped to question the judgment, because appellant, by accepting and retaining the benefits accruing to him under the judgment, waived his right of review. We think this contention must be sustained.

In Carle v. Carle, 149 Tex. 469, 234 S.W. 2d 1002, 1004, the Supreme Court said:

"A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom. That is the general

rule which appears to be universally recognized. It was announced by this court in the early case of Matlow v. Cox, 25 Tex. 578. The rule is based on the principle of estoppel. It, however, is subject to the exception that '* * * where the reversal of a judgment cannot possibly affect an appellant's right to the benefit secured under a judgment, then an appeal may be taken, * * *.' 2 Am.Jur., Appeal and Error, Sec. 215. Numerous authorities, approaching the exception from a slightly different angle, define it, in effect, in this language: Where an appellant accepts only that which appellee concedes, or is bound to concede, to be due him under the judgment he is not estopped to prosecute an appeal which involves only his right to a further recovery. Embry v. Palmer, 107 U.S. 3, 2 S.Ct. 25, 27 L.Ed. 346; Hodges v. Smith, 34 Tex.Civ.App. 635, 79 S.W. 328, error dismissed; Tyler v. Shea, 4 N.D. 377, 61 N.W. 468, 50 Am.St.Rep. 660; Bass v. Ring, 210 Minn. 598, 299 N.W. 679, 169 A.L.R. 980.

"The exception is narrow. Whether or not this case falls within it must be determined from answers to these questions: Could a reversal of the portions of the judgment referred to in these two certified questions possibly affect appellant's right to the benefits secured by him under the judgment? And would appellee be compelled to concede upon another trial that appellant has the right to retain those benefits regardless of the outcome of the litigation?"

As we view the record, the facts fail to bring the case within any of the exceptions to the general rule. It is apparent, we think, that this entire controversy hinges upon the question of what share or what portion of the partnership account Mrs. Richards owned at the time of her death. A determination of the question of her percentage of ownership would depend upon all the facts and circumstances with respect to her contribution to the account, as well as the agreement between the partners.

The extent of her ownership precipitated the dispute and resulted in the compromise agreement. Thus the parties, by their conduct, admit that the extent of her ownership was a controverted issue of fact. If this judgment should be reversed, the question of her share or portion of ownership would have to be re-litigated on a new trial, where a different court or jury might be expected to find that she had a different, and, possibly, smaller share in the account. The conclusion is therefore inescapable that in the event of another trial, appellant would not have the right to retain all of the benefits which he now has, including the sum of $750.00 paid him as a compromise settlement, regardless of the outcome of the litigation.

Having accepted the fruits of the judgment, we think appellant waived his right to appeal or to seek a review of the judgment for error. Matlow v. Cox, supra; City of Mesquite v. Rawlins, (Tex.Civ. App.) 399 S.W.2d 162; 169 A.L.R. 980, 988–989.

Accordingly, the appeal is dismissed.