Eugene BALABAN, et al., Appellants,

v.

Myrko BALABAN, Appellee.

No. 01–85–0580–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 17, 1986.

Rehearing Denied June 5, 1986.

Wendall S. Loomis, Loomis & McKenny, Houston, for appellants.

Andrew C. Brown, James R. Hunt, Houston, for appellee.

Before DUNN, DUGGAN and LEVY, JJ.

## OPINION

DUNN, Justice.

This is an appeal from a trespass to try title action in which judgment was entered placing title to the property in appellee.

In 1947, Myrko Balaban ("Myrko") was in the business of hauling sand in the Houston area. He came into contact with Berry, a supervisor on a job, and advised Berry that he was looking for a piece of land. In the latter part of that year, Berry informed Myrko that he knew of a piece of property on what is now Aldine-Westfield Road, near Houston Intercontinental Airport. The property in question was a farm owned by Riley C. Beard and Esther Beard, now comprising some 15½ acres after ceding some frontage to the City of Houston for road expansion. The Beards raised hogs on the property, and farmed corn and peanuts, primarily for feeding the stock.

Myrko informed his father, Mychajlo Balaban ("Mychajlo"), that he wanted the property, and Mychajlo, a Ukrainian immigrant who handled most of Myrko's business affairs, began negotiating with the Beards. At some point in 1947 or the early part of 1948, Mychajlo negotiated the purchase of the property. Under the agreement, a promissory note was to be assumed, and the Beards were to retain possession of the property to wind down crop and livestock operations as the market permitted. Myrko gave Mychajlo a down payment of about $400 and began paying monthly amounts as he was able. In 1948, Myrko married Loretta Young, and they lived for about a year in one of Mychajlo's rental properties until the Beards moved off the farm. Myrko and Loretta took

possession of the farm in April 1949. By deed dated April 1, 1949, duly recorded, the Beards conveyed the property to "M. Balaban". Myrko paid his father until sometime in 1953, when payment was completed.

In 1955, two judgments were obtained against Myrko and different co-defendants on debts for $100.00 and $992.79.

On August 7, 1957, Myrko and Loretta signed an affidavit of tenancy on the property in question.

Myrko and Loretta separated in the late 1960's, and were divorced in 1970. The property was not included in an agreed divorce settlement.

Mychajlo died intestate in June 1969. Immediately after Mychajlo's death, his brother Basyle Balaban became administrator of the estate. Basyle destroyed most of Mychajlo's records while cleaning the house, but Myrko obtained a small portion of ledger sheets and other notations covering a part of 1951 showing certain payments made by Myrko to his father. Basyle filed an inventory of estate assets that did not include the subject property. He died approximately a year after his brother Mychajlo. The estate was thereafter administered by Myrko's younger sister Oksanna, an appellant herein, who collected rents from the estate rental properties for a time. Oksanna resigned as administratrix, and Eugene, their elder brother and an appellant herein, was appointed in her stead. Eugene filed a second inventory of estate assets, which included the contested property. Until about this time, Myrko's claim of ownership was undisputed by the parties. When the estate was closed, Olga, the eldest child of Mychajlo, also an appellant herein, took over administration of the properties after Eugene. Appellants have, at all times, been aware of Myrko's claim. Title to the property became an issue when proposed airport expansion increased its value.

Myrko brought a trespass to try title action against his three siblings seeking to establish title in himself as record owner, or in the alternative, by limitations. Eugene, Olga, and Oksanna answered "not guilty" and asserted statute of frauds and estoppel defenses.

The case was tried before a jury, who answered special issues to the effect that Mychajlo Balaban was the purchaser of record from Riley and Esther Beard. The jury also found that Myrko Balaban purchased the land from Mychajlo, had possession, made valuable improvements, and had paid consideration for the property. Special issues concerning title by adverse possession were therefore not answered. The trial court entered judgment on the verdict. Eugene, Oksanna, and Olga bring this appeal.

By their first point of error, appellants contend that the trial court erred in admitting the testimony of Myrko Balaban over a continuing objection that he was estopped from asserting his claims.

Appellants base this claim of error on several forms of estoppel. We review the elements of judicial estoppel and judicial admissions before addressing appellants' specific contentions.

■ Judicial estoppel is based on inconsistency in judicial proceedings. Under the doctrine, a party is estopped merely by the fact of having alleged or admitted in his pleadings in a former proceeding under oath a position contrary to the assertion sought to be made. *Long v. Knox,* 155 Tex. 581, 585, 291 S.W.2d 292, 295 (1956). The doctrine has expanded to include other statements made under oath in the course of a former judicial proceeding. *See Swilley v. McCain,* 374 S.W.2d 871, 874–5 (Tex. 1964); *Aetna Life Insurance Co. v. Wells,* 557 S.W.2d 144, 147 (Tex.Civ.App.—San Antonio 1977), *writ ref'd n.r.e. per curiam,* 566 S.W.2d 900 (Tex.1978); *Van Deusen v. Connecticut General Life Insurance Co,* 514 S.W.2d 951, 956 (Tex.Civ. App.—Fort Worth 1974, no writ).

■ For a judicial admission to exist and be conclusive against a party it must be shown: (1) that the declaration relied on was made during the course of a judicial

proceeding; (2) that the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony; (3) that the statement was deliberate, clear, and unequivocal; (4) that giving conclusive effect to the declaration will be consistent with public policy; and (5) that the testimony must be such as relates to a fact upon which a judgment for the opposing party may be based. *Griffin v. Superior Insurance Co.*, 161 Tex. 195, 338 S.W.2d 415, 419 (1960).

Appellants contend that the 1957 affidavit of tenancy, Myrko's divorce proceedings, and Mychajlo's estate proceedings effect a judicial estoppel or constitute a judicial admission. Because appellants make additional estoppel assertions with respect to the estate proceedings, we discuss the issues presented by the estate proceedings separately.

■ The affidavit of tenancy involving the subject property was signed on August 7, 1957, at the insistence of Mychajlo. Loretta Young Goodwin testified that Mychajlo arrived that evening and informed them that they would lose their home if they did not sign the affidavit. Myrko testified: that Mychajlo wanted their signatures to protect against the loss of the property; that Myrko had asked his father to loan him some money during this period; that the money borrowed by his father was his father's personal business that he and his brother and sisters dared not question. The record indicates that Mykro's father loaned him the money that he requested shortly after his father secured the loan. In the record before us, there is also an affidavit signed by Mychajlo on August 6, 1957, representing that he was not the M. Balaban against whom judgment was had in the two causes brought in 1955 against Myrko. This affidavit, on its face, clearly evidences the father's intent to obtain a loan from Liberty Savings Association, and to secure this with a deed of trust on the subject property.

The record is devoid of evidence that Myrko's judgment creditors were seeking to execute on the property. The judgments were rendered approximately two years prior to the affidavit, rendering the affidavit more probably referable to Mychajlo's loan negotiations than to protection of the property from the judgment creditors. Appellants have conceded in oral argument that they knew of no attempt at execution and that, in any event, the property was arguably subject to a homestead exemption.

Moreover, the traditional structure of the family, as established by the testimony of its members, was such that Mychajlo exacted strict obedience from his children. He rarely gave reasons for his orders, and the children did as they were told without argument or question. This "old country" patriarchal structure continued to the time of Mychajlo's death.

In the absence of any evidence that the affidavit of tenancy was made in the course of judicial proceedings, we hold that it fails to establish that requisite element of either judicial estoppel or judicial admission.

We are persuaded that the surrounding circumstances and the family structure do not conclusively demonstrate that the affidavit of tenancy was made voluntarily and knowingly and with the intent to prevent satisfaction of the judgment. *See Long*, 155 Tex. at 585, 291 S.W.2d at 295. Instead, we view the affidavit as analogous to one presented in *Republic National Bank v. Stetson*, 390 S.W.2d 257 (Tex. 1965). There, the acknowledgement of tenancy by one who had perfected title was held ineffective to divest a limitation title. *Id.* at 260. No legal estoppel was applied. Here, the evidence tending to establish the payment of consideration by Myrko under Special Issue No. 2 also tends to establish that title was perfected in 1953. We perceive no sound policy reasons for imposing a conclusive bar to Myrko's testimony in this action by reason of the affidavit executed under these circumstances.

■ Appellants. also assert that Myrko is barred by his testimony in his divorce pro-

ceedings under the same doctrines. No record of the divorce proceedings are before the court. Instead, testimony was given by the attorney who represented Loretta to the effect that Myrko appeared and stated under oath that the property was not his. This testimony is called into question by the same attorney's deposition and the testimony and depositions of Loretta and Myrko. There is also some testimony tending to show that Myrko may not have been present during the proceedings, or may have been present for some hearings, or may not have testified under oath.

The divorce was granted under an agreed settlement in which Loretta did not claim and does not now assert an interest in the property. There is some evidence that the property was not included in the decree by virtue of the agreement.

The record fails to establish conclusively that Myrko made any statements under oath contrary to his present position in the course of the proceedings. Instead, we are presented with an unresolved fact issue by the testimony. In the absence of conclusive evidence that Myrko made sworn statements that the property was not his, we cannot impose the bar of judicial estoppel or admission by virtue of the proceedings.

Appellants contend that the proceedings administering and concluding Mychajlo's estate raise, in addition to judicial estoppel and admission, principles of collateral estoppel and attack, and general estoppel, which constitute a bar to his testimony claiming title here.

Traditionally, trespass to try title actions are not probate matters. However, recent changes in Texas law have increased the powers of the probate court to effect concurrent jurisdiction of the district and probate courts to adjudicate title to land incident to an estate proceeding. *See Hopkins v. Daniels,* 571 S.W.2d 413 (Tex.Civ.App.— Texarkana 1978, writ ref'd n.r.e.); *Bell v. Hinkle,* 562 S.W.2d 35 (Tex.Civ.App.— Houston [14th Dist.] 1978, writ ref'd n.r.e.), *cert. denied,* 454 U.S. 826, 102 S.Ct. 115, 70 L.Ed.2d 100 (1981).

A party seeking to invoke the doctrine of collateral estoppel must establish (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action.

*Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984).

■ Although not presented as a separate point of error, appellants contend in discussion of collateral estoppel that this action constitutes a collateral attack on the probate court's determination of title. The time for direct attack by motion for new trial, writ of error, or bill of review has passed.

However, it has also been held that the county court cannot change ownership of property by simply approving an inventory. *Anderson v. Anderson,* 535 S.W.2d 943, 944 (Tex.Civ.App.—Waco 1976, no writ); *Smith v. Buss,* 135 Tex. 566, 144 S.W.2d 529 (1940). Nor is the inventory conclusive evidence of title. *Krueger v. Williams,* 163 Tex. 545, 359 S.W.2d 48, 50 (1962). It has long been the law that an inventory is neither conclusive of nor does it work an estoppel on the question of title. *Koppelmann v. Koppelmann,* 94 Tex. 40, 44, 57 S.W. 570, 572 (1900).

■ Appellants assert that Myrko is generally estopped to challenge title under the theory that having accepted and retained some of the benefits of the estate proceedings, he cannot now challenge the disposition of the entire matter. *See Richards v. Richards,* 430 S.W.2d 18 (Tex.Civ. App.—Tyler 1968, writ ref'd n.r.e.). The exception to the rule relied on is also stated: where an appellant accepts only that which an appellee concedes, or is bound to concede, to be due him under the judgment, he is not estopped to prosecute an appeal that involves only his right to a further recovery. *Carle v. Carle,* 149 Tex. 469, 472, 234 S.W.2d 1002, 1004 (1950); *Richards,* 430 S.W.2d at 21.

In the estate proceedings, Myrko and his siblings signed an acknowledgement on August 25, 1973 (or 1975—illegible) stating that a copy of the Final Account for administration by Oksanna had been received, and no objections were made to its contents. This contained only an accounting of moneys received by the estate, but no inventory. The inventory filed by Eugene as successor administrator was signed January 6, 1975. A final accounting was signed by Eugene on August 25, 1975. This accounting included, by exhibit, Eugene's inventory listing the subject property. The court approved this final accounting on November 7, 1975. It was not until December 2, 1975, that Myrko and the three siblings signed the acknowledgement stating that they had received a copy of the final accounting and the Court's order approving same. No assertions were made in the acknowledgement that any of the siblings approved the contents of the inventory as set out by Eugene.

The Court's order approving the accounting makes no express determination of title to the property in the estate. It approves the final account and determines heirship in the proportion of ¼ to each of the surviving children of Mychajlo.

As to appellants' assertion of judicial estoppel and admission by the probate action, because the acknowledgement of receipt makes no assertion contrary to Myrko's present claim of title, we find that it does not constitute either judicial admission or estoppel.

With regard to appellants' claim of collateral estoppel by the probate proceedings, the inventory was not conclusive evidence of title. There is no evidence that the probate proceedings adjudicated title, that the question of title to this property was essential to the final order, or that the parties took an adversarial position in the proceedings. We find none of the elements of collateral estoppel presented, and having no prior adjudication of the title, we find this action does not, therefore, constitute a collateral attack on the probate court's order.

Appellants further assert that, inasmuch as Myrko has accepted the benefit of the proceeds of the estate, he is therefore estopped from asserting title to subject property. It is uncontested that the four parties share equally in the proceeds of the estate. To date, Myrko has accepted only those benefits that are due him. We find that he is not estopped under this theory. *See Carle,* 149 Tex. at 472, 234 S.W.2d at 1004.

We find that Myrko's testimony is admissible and is not barred by any of the alleged theories of estoppel.

The first point of error is overruled.

Appellants contend, in their second point of error, that the trial court erred in submitting Special Issue No. 2 over objection because the admissible evidence was conclusive to the contrary.

Because we have found all of appellee's allegedly objectionable evidence to be admissible, we hold that the evidence presented was sufficient to support the submission of Special Issue No. 2.

Appellants' second point of error is overruled.

Appellants claim, in their third point of error, that the trial court erred in submitting Special Issue No. 2 over their objection because sale, payment of consideration, and valuable improvements were not specifically pled.

Tex.R.Civ.P. 783 sets out the requisites for a petition in a trespass to try title action, all of which are pled here.

A formal petition which substantially follows the provisions of the rule is sufficient even though the allegations may be fictitious. Where a plaintiff complies with the requirements of the rule *he is not required to allege facts which show his right to recover.*

*Wagner v. Pulliam,* 361 S.W.2d 470, 473 (Tex.Civ.App.—Eastland 1962, no writ) (emphasis added). "Plaintiff, under a general allegation of ownership, may generally show whatever title he has to the property

without special pleadings, except title by limitation, which must be specially pleaded." *Doria v. Suchowolski,* 531 S.W.2d 360, 362 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.).

The third point of error is overruled.

■ Appellants contend, in their fourth point of error, that the submission of an instruction in conjunction with Special Issue No. 2 constituted a comment on the weight of the evidence.

The challenged instruction reads as follows:

> You are instructed that the term "consideration," as used in this Charge, means some right, interest, gain, advantage, benefit or thing of value offered by one party to another in return for some right, interest, gain, advantage, benefit or thing of value.

Contrary to appellants' assertion, the jury was not instructed that "anything of value *must* be regarded as consideration." The definition submitted does not appear misleading or erroneous, nor does it place undue emphasis on any evidence. Nothing in the record indicates that any intangible benefit, such as love and affection, was presented to the jury. The evidence of consideration brought forward was that of purchase and sale of land for money.

We find that the instruction did not constitute a comment on the weight of the evidence.

Appellants' fourth point of error is overruled.

■ Appellants claim, in their fifth point of error, that the evidence was insufficient to support the jury's finding to Special Issue No. 2.

When considering a question of factual sufficiency, we are required to consider and weigh all the evidence in the case, and to set aside the verdict if it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

The evidence shows that Myrko Balaban remained in possession of and made valuable improvements on the property beginning from 1949 to date. Appellants do not contest these facts. Further, the evidence supports the finding that Mychajlo sold the property to Myrko and Myrko paid him for it.

Testimony from Myrko, Loretta, her brother Frank Young, Myrko's cousin Victor Balaban, and Mario Stackpole, reveals that Mychajlo had told each of them that Myrko had made a down payment of about $400 to him to purchase the property. Appellant Oksanna Balaban testified on cross-examination that her husband told her that Mychajlo said that he sold the property to Myrko, and that she believed this was true, although she believed the down payment to have been around $200 or $300.

There was also evidence by Myrko, Loretta, and Frank Young that the final payment was made in 1953. Exhibits were tendered showing ledger sheets made by Mychajlo from a portion of 1951. These reflected payments by Myrko. Testimony by the various family members showed that Mychajlo had kept regular records, but that Basyle Balaban had destroyed most of them after Mychajlo's death. Apparently no one questioned whether it was Myrko's property, until Eugene determined to include the property in the estate. Myrko then vigorously asserted that it was his and that he had paid for it.

After considering and weighing all of the evidence contained in the record of this case, we hold that the jury's finding is not against the great weight and preponderance of the evidence.

Appellants' fifth point of error is overruled.

The judgment of the trial court is affirmed.