**Opinion filed May 22, 2014**



# In The

# Eleventh Court of Appeals

_____

## No. 11-12-00173-CV

_____

## IN THE MATTER OF THE ESTATE OF
## J.L. BEASLEY, DECEASED

### On Appeal from the County Court
### Jones County, Texas
### Court Cause No. 11-6985

## M E M O R A N D U M   O P I N I O N

Kelly Ashworth Stovall, Appellant, appeals the final judgment entered by the assigned statutory probate judge, the Honorable Robert E. Price, who construed the Last Will and Testament of J.L. Beasley. Judge Price held that J.L. intended to give Appellant 80 acres located on the east side of the western half of the 320-acre tract of land, but not the house or barn located on the 320-acre tract. Appellant and J.L. each owned an undivided one-half interest in the entire 320-acre tract at the

time of J.L.'s death. Appellant challenges the court's findings of fact and conclusions of law on the issues of latent ambiguity in J.L.'s will, the admission of extrinsic evidence, and the legal and factual sufficiency of the evidence. We affirm in part and reverse and remand in part.

## I. *Background Facts*

Juanita Beasley died before her husband, J.L. Beasley. Prior to Juanita's death, she and J.L. owned, in common, a 320-acre tract of land in Jones County, Texas. Located on the west side of the 320-acre tract of land is a house, which served as the couple's residence. A barn is also located on the 320-acre tract. A satellite image of the property, which was entered into evidence, is reproduced below.



The barn appears to be the central structure in the satellite image, while the house, the smaller structure, lies just northwest of the barn. No one testified about the structures' locations as depicted in the satellite image. Through her will, Juanita gave her one-half undivided community interest in the 320-acre tract of land to Appellant, her granddaughter. Juanita gave her one-half community interest in the house to her husband.

2

J.L. died on July 27, 2010, and his will was admitted to probate in the Jones County Court. J.L. bequeathed a portion of the 320-acre tract to Appellant and a portion to Appellee, Judy Beasley Cooley. J.L.'s will contains the following bequests regarding the 320-acre tract of land:[1]

> [Section 3.01.1 of the will provides that Appellant is to receive] all of that real property situated in Jones County, Texas, and being the east one-half of that 320 acre tract located in the T.A. Thompson Survey No. 203, Patent No. 149, Jones County, Texas, as said 320 acre tract is described in Warranty Deed from David Bales et al to N.S. Dougherty, dated August 28, 1891, recorded in Vol. 11, Page 156, and in a deed filed in Volume 517, Page 298, all in the Deed Records of Jones County, Texas.

> [Section 3.01.3(a) of the will provides that Appellee is to receive] [t]he west one-half of that 320 acre tract located in the T.A. Thompson Survey No. 203, Patent No. 149, Jones County, Texas, as said 320 acre tract is described in Warranty Deed from David Bales et al to N.S. Dougherty, dated August 28, 1891, recorded in Vol. 11, Page 156, and in a deed filed in Volume 517, Page 298, all in the Deed Records of Jones County, Texas.

J.L.'s will named Appellee, his daughter, the executor of his estate. After assuming her role as executor, Appellee interpreted J.L.'s will to mean that she was to receive the house outright and that she and Appellant were to equally share an undivided one-half interest in the 320-acre tract of land. Appellant disagreed with Appellee's interpretation and brought a declaratory judgment action, by which she asked the court to construe J.L.'s will to convey an 80-acre tract on the western half of the 320-acre tract to Appellee, while the other 80 acres to the east, but still on the western half of the 320-acre tract, went to Appellant.

After a bench trial, Judge Price issued a final judgment that construed J.L.'s will to give 80 acres on the west side of the western half of the 320-acre tract,

---

[1]The will makes no mention of the house or any barn located on the 320-acre tract of land.

including the house and barn, which Judge Price found to be situated thereon, to Appellee and 80 acres on the east side of the western half of the 320-acre tract to Appellant. The interest Appellant received from Juanita was construed to be the eastern 160 acres of the entire 320-acre tract. At Appellant's request, the court issued findings of fact and conclusions of law.

Appellant filed a motion for new trial, in which she contended that the court erred when it found that J.L.'s will was a legal partition of the 320-acre tract. The court denied Appellant's motion for new trial, and this appeal followed.

## II. *Issues Presented*

Appellant presents eight issues on appeal. In her first three issues, Appellant contends that the lower court erred when it held as a matter of law that J.L.'s will contained an ambiguity that required the court to look to extrinsic evidence; when it considered extrinsic evidence to resolve said ambiguity, given that Texas law resolved the ambiguity; and when it considered declarations made by J.L. that contradicted his will.

By her fourth issue, Appellant claims that the evidence was legally and factually insufficient to support the court's finding that J.L. intended to convey to Appellee all of his interest in the marital residence and barn located on the west side of the 320-acre tract. Appellant also challenges the court's finding that J.L. intended to convey to Appellee an 80-acre tract on the west side of the 320-acre tract that included the marital residence and barn.

Through her fifth and sixth issues, Appellant argues that the county court's final judgment cannot be upheld because it is contrary to the law of partition and because there was no evidence of a description of the 80-acre tract of land devised to Appellee. In her seventh issue, Appellant claims that the court should not have given effect to J.L.'s intent because it contradicts Texas law regarding partition. By her eighth issue, Appellant contends that the county court's final judgment

4

must be remanded, given that it does not provide the requested relief and raises numerous fact issues.

## III.  *Standard of Review*

Extrinsic evidence is admissible to determine a testator's intent when there is an ambiguity in the language of the will.  *In re Estate of Cohorn*, 622 S.W.2d 486, 488 (Tex. App.—Eastland 1981, writ ref'd n.r.e.).  Whether the language of a will is ambiguous is a question of law and is reviewed by this court de novo.  *In re Estate of Slaughter*, 305 S.W.3d 804, 808 (Tex. App.—Texarkana 2010, no pet.).  In a de novo review, the lower court's decision is accorded no deference.  *Id.*

## IV.  *Analysis*

### A.  *Ambiguity*

Appellant challenges, in her first issue, Judge Price's Conclusions of Law No. 7 and No. 8, by which the court held that J.L.'s will contained a latent ambiguity that required it to look at extrinsic evidence in order to determine J.L.'s intent.  Appellant argues that Sections 3.01.1 and 3.01.3 of J.L.'s will unambiguously devised his one-half undivided interest in the 320-acre tract, which was 160 acres, in an 80-acre parcel to her, situated on the eastern half of the west half of the 320-acre tract, while Appellee got the other 80-acre parcel on the western half of the west half of the 320-acre tract.  The remaining eastern half, 160 acres, of the 320-acre tract belonged to Appellant by the prior bequest of Juanita.  Appellant also contends that she and Appellee are each entitled to a one-half interest in the house located on the 320-acre tract because J.L. did not specifically mention the house in his will and because a gift of real property includes whatever is erected or affixed to the land.

Appellee argues that Appellant is judicially estopped from arguing on appeal that J.L.'s will is unambiguous when Appellant asserted at trial that the will was ambiguous.  In the event that we find that judicial estoppel does not apply to this

5

case, Appellee alternatively claims that J.L.'s will was ambiguous and that, therefore, the court did not err when it admitted extrinsic evidence in order to determine his intent.

Under the doctrine of judicial estoppel, a party is estopped merely by the fact of having alleged or admitted in his pleadings, in a prior proceeding under oath, a position contrary to the assertion sought to be made. *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956); *Balaban v. Balaban*, 712 S.W.2d 775, 777 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Judicial estoppel does not apply to contradictory positions taken in the same proceeding but is called into play only in a subsequent action. *Wells v. Kansas Univ. Endowment Ass'n*, 825 S.W.2d 483, 488 (Tex. App.—Houston [1st Dist.] 1992, writ denied). An appeal is not considered a "subsequent action" to which judicial estoppel applies. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 397 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). The statements on which Appellee bases her claim of judicial estoppel were not made during a prior judicial proceeding and were not made under oath. Thus, Appellee has failed to establish the requisite elements of judicial estoppel. *See Owen v. Knop*, 853 S.W.2d 638, 641 (Tex. App.—Corpus Christi 1993, writ denied); *Wells*, 825 S.W.2d at 488.

We next consider whether J.L.'s will was ambiguous. In construing a will, the court must focus on the testator's intent. *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 639 (Tex. 2000). This intent must be ascertained from the language found within the four corners of the will. *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). The court focuses not on what the testator intended to write, but on the meaning of the words actually used. *San Antonio Area Found.*, 35 S.W.3d at 639. In this light, courts must not redraft wills to vary or add provisions "under the guise of construction of the language of the

6

will" to reach a presumed intent. *Shriner's Hosp. for Crippled Children*, 610 S.W.2d at 151.

If the will is unambiguous, the court looks to its terms to ascertain intent. *San Antonio Area Found.*, 35 S.W.3d at 639. If, on the other hand, the meaning of the instrument is uncertain or reasonably susceptible to more than one meaning, the instrument is ambiguous, and extrinsic evidence should be considered to ascertain the testator's intent. *Davis v. Shanks*, 898 S.W.2d 285, 286 (Tex. 1995); *Eckels v. Davis*, 111 S.W.3d 687, 694 (Tex. App.—Fort Worth 2003, pet. denied). When a will is ambiguous, evidence of the testator's situation, the surrounding circumstances, and like indicia that enable the court to place itself in the shoes of the testator at the time the document was executed may be admissible. *San Antonio Area Found.*, 35 S.W.3d at 639.

When a will contains an ambiguity, that ambiguity may be classified as latent or patent. *In re Estate of Brown*, 922 S.W.2d 605, 608–09 (Tex. App.—Texarkana 1996, no writ). A patent ambiguity is one apparent on the face of the will. *Id.* at 608. Such an ambiguity arises on the reading of the will from the words themselves. *Id.* A latent ambiguity exists when the will appears to convey a sensible meaning on its face but cannot be carried out without further clarification. *Id.* at 608–09. Extrinsic evidence is admissible to show the testator's intent, whether the ambiguity is latent or patent. *Id.* at 609.

In this case, we find that the language used in Sections 3.01.1 and 3.01.3 of J.L.'s will represented a latent ambiguity, as the language falsely suggested that J.L. owned the entire 320-acre tract of land. Consequently, we hold that Judge Price did not err when he considered extrinsic evidence because such evidence was needed to establish the amount of interest J.L. actually owned in the land and to determine what J.L. intended to accomplish through Sections 3.01.1 and 3.01.3 of his will. Appellant's first issue is overruled.

## B. Extrinsic Evidence

Appellant argues in her second issue that, even if J.L.'s will contained an ambiguity, Judge Price erred when he considered extrinsic evidence because the ambiguity was resolved by the presumption under Texas law that a testator intends to dispose of only his property. Applying the presumption, Appellant claims that the only possible interpretation of Sections 3.01.1 and 3.01.3 is that J.L. intended to convey the east one-half of his one-half interest in the 320 acres to Appellant and the west one-half to Appellee.

We find that the application of the legal presumption that a testator intends to dispose of only his property would not have resolved the ambiguity presented by Sections 3.01.1 and 3.01.3 of J.L.'s will. The presumption would have provided no clarification as to the amount and nature of J.L.'s interest in the 320-acre tract of land. Extrinsic evidence was therefore needed in order to determine that J.L. owned a one-half undivided interest in the land. Appellant's second issue is overruled.

Appellant argues in her third issue that, because the will did not mention the house located on the west half of the 320-acre tract of land, any and all extrinsic evidence regarding J.L.'s intended devise of the house contradicted the terms of the will and should not have been admitted. Appellant contends that the court should have limited the evidence to only that which showed the circumstances surrounding J.L.'s execution of his will.

The only purpose or justification for the admission of extrinsic evidence is to explain, and arrive at, the testator's meaning of the words of the will. *Najvar v. Vasek*, 564 S.W.2d 202, 206 (Tex. Civ. App.—Corpus Christi 1978, writ ref'd n.r.e.). When there is no dispute as to what the written words in a will mean, extrinsic evidence cannot be received to show that the testator intended something outside of or independent of such written words, to add words to those in the will,

8

to contradict the language in the will, or to take words away from those in the will. *Huffman v. Huffman*, 339 S.W.2d 885, 888 (Tex. 1960).

Here, the court considered extrinsic evidence in order to determine what J.L. meant to accomplish through the language he used in his will. In deposition testimony, Chad Cowan, the attorney who drafted the will, explained that J.L. understood that he only owned a one-half interest in the 320 acres. Cowan further stated that J.L. intended to give Appellee the west half of his interest in the 320 acres and the house located on that section of the land.

Transcripts of audio recordings of the meetings Cowan held with J.L. were also considered by the lower court. The transcripts show that J.L. understood that he only owned a one-half interest in the 320 acres and that his intent was to give Appellee the west section of his interest in the 320 acres and the house located on that portion of the property.

We hold that the lower court did not err when it considered extrinsic evidence regarding J.L.'s intended devise of the house located on the west section of the 320-acre tract of land. The fact that J.L. wanted to give Appellee the house is relevant to the court's determination of what he intended to accomplish by his devise to Appellee of the "west one-half of [the] 320 acre tract." The evidence related to the house did not contradict the language in the will. Rather, the evidence aided the court in establishing J.L.'s intent regarding the ambiguous sections of his will. Appellant's third issue is overruled.

*C. Challenges to Findings of Fact*

Appellant claims in her fourth issue that the evidence submitted at trial was legally and factually insufficient to support the court's Findings of Fact No. 4 and No. 5. The lower court found as follows:

> No. 4. It was J.L. Beasley's intent to convey to [Appellee] all of his interest in the marital residence and barn located on the 320

9

acre tract of land, both being physically located on the west ½ of the 320 acre tract.

No. 5. It was J.L. Beasley's intent to convey to [Appellee] an 80 acre tract on the west side of the 320 acre tract, which the marital residence and the barn are both situated thereon.

Findings of fact in a case tried to the court have the same force and dignity as a jury's verdict on special issues. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex. Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards used in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer. *Okon v. Levy*, 612 S.W.2d 938, 941 (Tex. Civ. App.—Dallas 1981, writ ref'd n.r.e).

When reviewing a finding of fact for legal sufficiency, we may set aside the finding only if the evidence at trial would not enable a reasonable and fair-minded finder of fact to make the finding under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we must credit favorable evidence, if a reasonable finder of fact could, and disregard contrary evidence, unless a reasonable finder of fact could not. *Id.* The finder of fact is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819.

Regarding factual sufficiency challenges, where a party who did not have the burden of proof on an issue asserts that the court's finding of fact is contrary to the evidence, we must overrule the complaint unless, considering all the evidence, the finding is clearly wrong and manifestly unjust. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). In conducting our review, we must consider, weigh, and compare all of the evidence that supports and that which is contrary to the finding. *Sosa v. City of Balch Springs*, 772 S.W.2d 71, 72 (Tex. 1989).

We address both of Appellant's challenges to the court's findings. Appellant argues that the evidence showed that J.L. never intended to convey any barn to Appellee. Appellant also contends that the evidence presented at trial established that J.L. never believed he owned a specific 160 acres but, rather, an undivided one-half interest in the 320-acre tract.

We disagree with Appellant's contention that there was no evidence that J.L. intended to give the barn to Appellee, but we agree that the evidence is factually insufficient to support the court's finding that J.L. intended to give Appellee a barn located on the 320-acre tract.[2] First, J.L. did not have a 100% interest in the barn to bequeath to Appellee. After Juanita gave her undivided one-half interest in the 320 acres to Appellant (with the exception of the house), Appellant and J.L. each owned a one-half undivided interest in any improvements located on the land. *See Pickrell v. Pickrell*, 134 S.W.2d 740, 743 (Tex. Civ. App.—Amarillo 1939, no writ) (finding that, in the absence of a reservation in the deed, devise, or decree, buildings and other articles affixed to or used in connection with realty in such a way as to constitute appurtenances or fixtures pass as a matter of course by the conveyance, devise, or decree passing the title to the realty).

Second, based on incomplete and conflicting evidence, the barn's precise location on the western half of the 320-acre tract of land is unclear. No survey was introduced as evidence in trial. Cowan stated that J.L. believed the barn was located on the east half of the 320 acres. Cowan, in his deposition testimony, said J.L. intended to give this barn to Appellant by giving her the east one-half of the 320-acre tract. Appellant also testified that the barn was located on the east portion of the land. However, Richard Cooley, the husband of Appellee, contradicted

---

[2]We note that there was legally and factually sufficient evidence to support the trial court's finding that J.L. intended to devise the marital residence to Appellee. The transcripts of conversations between J.L. and his attorney show that he intended to give Appellee the house located on the west half of the 320-acre tract.

11

Cowan and Appellant and testified that the barn was located on the west side of the 320 acres.

Although the parties admitted maps into evidence under their Agreed Stipulation of Facts and Documents, these maps do not identify the precise location of the 320-acre tract, the house, or the barn. The satellite image entered into evidence shows a small structure to the northwest of a larger structure, both of which are on the western half of the entire 320-acre tract of land. A copy of the image is reproduced below.



In the image, the smaller structure, which may be the marital residence or house, appears in the upper left-hand corner of the image and appears to be located on the west 80 acres of the western half of the entire 320-acre tract. The larger structure, presumably the barn, appears to be on the eastern 80 acres of the western half of the 320-acre tract. The barn is southeast of the house. The satellite image and the map in the record, however, do not delineate the exact boundaries of the property or the locations of improvements.

We hold that the court did not err in finding that it was J.L.'s intent to convey to Appellee 80 acres on the west side of the western half of the 320-acre

tract, as the evidence was legally and factually sufficient to establish that J.L. intended to give Appellee a specific one-half of his one-half interest in the 320 acres, that amount being roughly 80 acres. Although J.L. acknowledged, in the taped conversations he had with his attorney, that he did not own a specific part of the 320-acre tract, he clearly intended, by his devise to Appellee of the "west one-half of [the] 320 acre tract," to give away a specific portion of the 320 acres, not an undivided interest in the whole property.

Judge Price also found that the marital residence and barn are located on the specific 80 acres J.L. intended to convey to Appellee. Although we agree with the trial court's finding that J.L.'s intended devise to Appellee included the marital residence, we do not agree with its finding that the devise also included a barn. We hold that the evidence was factually insufficient to support the court's finding that a barn was located on the specific 80 acres J.L. intended to devise to Appellee. We also find that the evidence was factually insufficient to support the court's finding that J.L. intended to devise a barn to Appellee by giving her a specific 80 acres. Additional evidence is needed to determine the parties' ownership rights in the barn, as well as the barn's precise location on the two 80-acre parcels that lie on the western half of the 320-acre tract of land. Having found that the court's Findings of Fact No. 4 and No. 5 were insufficiently supported by the evidence, we sustain Appellant's fourth issue.

### D. Doctrine of Equitable Partition

Appellant contends in her fifth and seventh issues that, even assuming J.L. intended to convey an 80-acre tract, on the western half of the western half of the 320 acres, to Appellee and an 80-acre tract, on the eastern half of the western half of the 320 acres, to Appellant, such intent cannot be given effect because it is contrary to the law of equitable partition. Appellant suggests that, because the tract she received does not contain valuable improvements and the tract Appellee

13

received does contain such improvements, the two tracts are not equal in value and cannot be partitioned.

In response, Appellee argues that J.L.'s will operated as an equitable partition that did not result in injustice to Appellant. In support of her claim, Appellee cites *Broughton v. Millis*, 67 S.W.2d 650 (Tex. Civ. App.—Galveston 1933, no writ). In *Broughton*, a testator jointly owned five parcels of land with his wife. 67 S.W.2d at 651. Through his will, the testator attempted to give away two of the five parcels to individuals outside the marriage. *Id.* at 651–52. The trial court held that the testator's devise had only passed his one-half undivided interest in the parcels of land. *Id.* at 653. The Galveston Court of Appeals reversed the trial court and held that the testator's devise operated as an equitable partition and that the devisees were entitled to have the devised property set apart to them, inasmuch as this could be done without injustice to the owner of the other undivided half interest in the common estate. *Id.* at 655.

Here, by using the language "west one-half of [the] 320 acre tract" and "east one-half of [the] 320 acre tract," J.L. attempted to partition his undivided one-half interest in the 320 acres into two tracts of land, each roughly 80 acres in size. J.L.'s devise served as an equitable partition, as the partition can be made without causing injustice to Appellant.

We do not agree with Appellant's contention that the partition is unequitable because the tract of land Appellee received contains valuable improvements. In support of her claim, Appellant points to the fact that Appellee received both the house and barn located on the 320-acre tract of land; however, the house is not relevant to determining if the partition in this case was equitable. Because J.L. owned a 100% interest in the house, he was free to devise the house without concern for whether the devise would do injustice to Appellant. But because J.L. did not own a 100% interest in the barn, we are remanding that part of the case to

14

determine who owns the barn, and we recognize the trial court may need to adjust the boundaries of the two partitioned tracts. Although the barn's ownership is not determinative of whether J.L. intended to partition the property, the trial court must determine who owns the barn. J.L.'s intent to divide his one-half interest in the 320 acres into two 80-acre tracts was not contrary to the law of equitable partition, and we hold that the trial court did not err in giving effect to such intent. Appellant's fifth and seventh issues are therefore overruled as to the partition issue but, as explained above, are sustained on the issue of location and devise of the barn.

### *E. Adequacy of Final Judgment*

Appellant attacks, in her sixth and eighth issues, the adequacy of Judge Price's final judgment. In her sixth issue, Appellant argues that the judgment cannot be upheld because no evidence was presented describing the location of the 80-acre tract J.L. intended to devise to Appellee. In her eighth issue, Appellant contends that the judgment presents a number of fact issues by failing to describe (1) the location of the barn, (2) the parameters of the home devised to Appellee, (3) the location of the 80-acre tract devised to Appellee, and (4) the line of division created by the "east" and "west" labels used by the court.

A judgment in favor of the plaintiff in a suit for land must describe the land so that it can be identified with certainty from the judgment. *Stovall v. Finney*, 152 S.W.2d 887, 890 (Tex. Civ. App.—Amarillo 1941, no writ). Any errors on the face of the record that cause uncertainty in the description of the real property interest are fundamental. *Id.* "For a deed or instrument to effect conveyance of real property, it is not necessary to have all the formal parts of a deed formerly recognized at common law or to contain technical words. If, from the whole instrument, a grantor and grantee can be ascertained, and if there are operative words or words of grant showing an intention of the grantor to convey title to a real

15

property interest to the grantee, and if the instrument is signed and acknowledged by the grantor, it is a deed which is legally effective as a conveyance." *Harlan v. Vetter*, 732 S.W.2d 390, 392 (Tex. App.—Eastland 1987, writ ref'd n.r.e.) (citing *Harlowe v. Hudgins*, 19 S.W. 364 (Tex. 1892); *Brown v. Byrd*, 512 S.W.2d 753 (Tex. Civ. App.—Tyler 1974, no writ); and *Harris v. Strawbridge*, 330 S.W.2d 911 (Tex. Civ. App.—Houston 1959, writ ref'd n.r.e.)).

Although neither party in this case requested a specific description of the property she received under J.L.'s will, the court's order must contain sufficient information for enforcing the parties' real property interests. As we have previously explained, the trial court did not err when it construed J.L.'s intent to devise the east 80 acres of the western half of the 320-acre tract to Appellant and the western 80 acres of the western half of the 320-acre tract to Appellee, but we agree that a description sufficient for recording and enforcing the respective real property interests is not in the record or the court's order. Upon remand, the parties must secure a survey that will assist the trial court in ascertaining the respective descriptions for each 80-acre tract. We sustain Appellant's sixth issue; we also sustain Appellant's eighth issue with respect to part (1)—the barn—and parts (3) and (4)—the property descriptions. We overrule Appellant's eighth issue with respect to part (2)—the home—for the reasons previously explained on J.L.'s devise of the home to Appellee.

## V.    *This Court's Ruling*

We affirm in part and reverse in part the judgment below. We reverse the judgment as it pertains to those issues that involve the barn and the boundaries of the two tracts of land. The cause is remanded so that the trial court can determine the precise location of the barn on the 320-acre tract of land, in addition to each party's interest in the barn, and so that the trial court can provide a sufficient description of the properties each party received under J.L.'s will with such

16

description being precise enough for recording and enforcement.  The remainder of the trial court's judgment is affirmed.

MIKE WILLSON

JUSTICE

May 22, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

17