**NOVA CASUALTY COMPANY,**
**Appellant,**

v.

**TURNER CONSTRUCTION**
**COMPANY, Appellee.**

**No. 14–09–00733–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Feb. 10, 2011.

---

3.  *Webb*, 232 S.W.3d at 112.

Byron C. Keeling, Ruth B. Downes, James D. Cupples, Sonia Michelle Mayo, Houston, for Appellant.

Jeff D. Lefkowitz, Houston, for Appellee.

Panel consists of Chief Justice HEDGES, Justice JAMISON, and Senior Justice MIRABAL.*

## SUBSTITUTE OPINION ON REHEARING

ADELE HEDGES, Chief Justice.

We deny appellant's motion for rehearing en banc as moot, withdraw our opinion of January 11, 2011, and issue this substitute opinion on rehearing. In this performance bond dispute, Nova Casualty Company ("Nova"), the surety, challenges the summary judgment granted in favor of Turner Construction Company ("Turner"), the surety bond obligee. In three issues, Nova asserts that the trial court erred by (1) granting summary judgment because Turner failed to terminate the obligor, Box or Container Automation, Inc. ("BOCA"), from the underlying contract secured by

---

* Senior Justice Margaret Garner Mirabal sitting by assignment.

the performance bond; (2) granting summary judgment because Turner failed to provide sufficient notice of BOCA's default on the underlying contract to enable Nova to exercise its performance options under the bond; and (3) awarding attorney's fees and pre-judgment interest to Turner. We affirm.

## BACKGROUND

The City of Houston (the "City") hired Turner as the general contractor to build a new cargo facility at Bush Intercontinental Airport. The contract between the City and Turner provided for the assessment of liquidated damages against Turner if Turner were late in completing the project. In January 2004, Turner subcontracted with BOCA to fabricate and install a baggage handling system for the new facility. Turner agreed to pay BOCA a subcontract price of $415,000. This subcontract was time sensitive in that it required BOCA to install the baggage handling system during a narrow time window near the end of the entire project. In Article III, the subcontract provided:

> Should the progress of the Work of the Project be delayed, disrupted, hindered, obstructed, or interfered with by any fault or neglect or act or failure to act of the subcontractor ... so as to cause any additional cost, expense, liability or damage to Turner ... the Subcontractor and its surety shall and does hereby agree to compensate Turner ... for and indemnify [it] against all such costs, expenses, damages and liability.

The subcontract provided in Article XI that BOCA's failure to fully perform or satisfy any of its contractual obligations (among other things) constituted a default entitling Turner to:

> the right, *in addition to any other rights and remedies provided by this Agreement and the other Contract Documents or by law*, after three (3) days written notice to [BOCA] mailed or delivered to the last known address of the latter, (a) to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to [BOCA] under this Agreement, and/or (b) to terminate the employment of [BOCA] for all or any portion of the Work, enter upon the premises and take possession, for the purpose of completing the Work, of all materials, equipment, scaffolds, tools appliances and other items thereon, all of which [BOCA] hereby transfers, assigns and sets over to Turner for such purpose, and to employ any person or persons to complete the Work and provide all the labor, services, materials, equipment and other items required therefor.... [I]f the unpaid balance of the amount to be paid under this Agreement shall exceed the cost and expense incurred by Turner in completing the Work, such excess shall be paid by Turner to [BOCA], but if such cost and expense shall exceed such unpaid balance, then [BOCA] and its surety, if any, shall pay the difference to Turner.

(emphasis added). The subcontract additionally required BOCA to obtain and furnish a performance bond in favor of Turner.

BOCA obtained a performance bond from Nova in the amount of the subcontract price. The performance bond Nova issued to BOCA was a standard performance bond known in the surety industry as an A–311 bond. The bond provided the following remedies available to Turner against Nova in the event that BOCA defaulted on the subcontract:

> NOW, Therefore, the Condition of this Obligation is such that, if [BOCA] shall promptly and faithfully perform said subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

Whenever [BOCA] shall be, and be declared by [Turner] to be in default under the subcontract, [Turner] having performed its obligations thereunder:

(1) [Nova] may promptly remedy the default subject to the provisions of paragraph 3 herein, or: .

(2) [Turner] after reasonable notice to [Nova] may, or [Nova] upon demand of [Turner] may arrange for the performance of [BOCA]'s obligation under the subcontract subject to the provisions of paragraph 3 herein:

(3) The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of completing performance of the subcontract. If completed by [Turner], and the reasonable cost exceeds the balance of the subcontract price, [Nova] shall pay to [Turner] such excess, but in no event shall the aggregate liability of [Nova] exceed the amount of this bond....

The bond also incorporated the terms of the subcontract by reference: "[BOCA] has by written agreement dated 1/16/2004 entered into a subcontract with [Turner] ..., which subcontract is by reference made a part hereof...."

Turner made several payments to BOCA without objection under the subcontract. However, when BOCA was to begin installing the system, Turner sent a series of letters to BOCA regarding BOCA's failure to meet its performance deadlines. None of these letters declared BOCA in default, and Nova was not copied on any of these letters. On November 9, 2004, Turner invoked Article XI of the subcontract by sending BOCA written notice giving it three days to cure its deficient performance. Turner elected to move forward under option (a) of this Article, which, as noted above, entitled Turner "to perform and furnish through itself or through others any such labor or materials for the Work and to deduct the cost thereof from any monies due or to become due to [BOCA] under this Agreement[.]" Turner did not notify Nova that it considered BOCA to be in default at that time.

On December 15, 2004, Turner notified Nova that BOCA had defaulted on the subcontract. Specifically, Turner faxed a letter to Nova which provided as follows:

The Principal, [BOCA], due to insufficient funds has not been able to pay for labor and material necessary to complete this Project. BOCA has requested that we provide labor and material on their behalf to complete the Project. *This letter, therefore, constitutes notice of default by BOCA, Inc. per the terms of the bond.* We request that you contact us immediately to review and resolve the non-payment issues for labor and material on this Project.

(emphasis added). Nova hired a consultant, Forcon International Corporation ("Forcon") to investigate BOCA's default. Forcon corresponded with Turner to determine whether BOCA had defaulted and the amount of Nova's liability, if any, under the surety bond. Turner communicated with Forcon regarding the actions it took to complete the project, including the need to completely re-do much of BOCA's work that had failed certain necessary tests. Nova took no action, instead communicating with Turner through Forcon that it was continuing to investigate the default. Forcon's January 25, 2005 internal investigation report disclosed Turner's estimate of over $800,000 to complete the project and over $200,000 in liquidated damages owed by Turner to the City as a result of project delays caused by BOCA's default.

On January 21, 2005, Nova notified Turner that, until BOCA was terminated from the project, Nova could not proceed to elect its remedies under the bond; it re-

quested that Turner fax a copy of the termination letter as soon as possible. In February and March of 2005, Turner sent letters to Nova stating that BOCA's default caused Turner to incur costs exceeding the penal sum of the bond and demanding payment under the bond. Nova did not respond, other than to inform Turner that it was still investigating the project. Turner completed the project in July of 2005. In August 2006, Forcon concluded that the value of Turner's claim was over $900,000, more than double the amount of the penal sum of the performance bond. On November 20, 2006, Nova rejected Turner's bond claim, informing Turner that "a condition precedent" for making the bond claim was that BOCA "shall be and be declared to be in default." Turner thereafter sued both Nova and BOCA. Turner obtained an interlocutory default judgment against BOCA in May 2008.

Nova and Turner filed competing motions for summary judgment, as well as numerous replies and responses and a wealth of documents in support of their respective positions. Prior to the trial court's ruling on the summary-judgment motions, the parties stipulated to the following:

1. Turner did not send written notice of termination to BOCA.

2. The undisputed summary judgment evidence is that BOCA abandoned the project and subcontract on December 14, 2004. Nova does not dispute that BOCA abandoned the project on December 14, 2004.

3. Turner contends that it gave timely notice to Nova. Nova disputes that timely notice was given. However, Nova acknowledges that even if Turner had given timely notice, damages to Turner under the bond, if due, would exceed $415,000.00.

4. Nova contends that prejudice to Nova is presumed due to Turner's actions prior to December 15, 2004, but Nova acknowledges that Nova cannot identify any persons with personal knowledge who could testify that Nova was prejudiced or harmed by Turner's conduct.

On July 14, 2009, the trial court granted Turner's Motion for Partial Summary Judgment, as supplemented, and found Nova liable to Turner for breach of the bond.[1]

This partial summary judgment became final on July 31, 2009, when the trial court

1. In finding in favor of Turner, the trial court stated that it considered only the following pleadings filed by Turner and Nova:
  ● Turner's Motion for Partial Summary Judgment;
  ● Nova's Cross–Motion for Summary Judgment and Response to Turner's Motion for Partial Summary Judgment;
  ● Turner's Response to Nova's Cross–Motion for Summary Judgment and Turner's Supplemental Motion for Partial Summary Judgment;
  ● Nova's Reply in Support of Nova's Cross–Motion for Summary Judgment and Response to Turner's Supplemental Motion for Partial Summary Judgment;
  ● Turner's Cross Reply to Nova's Reply in Support of Nova's Cross–Motion for Summary Judgment and Turner's Reply to Nova's Response to Turner's Supplemental Motion for Partial Summary Judgment;
  ● Turner's Supplemental Response to Nova's Cross Motion for Summary Judgment;
  ● Nova's Reply to Turner's Supplemental Response to Nova's Cross Motion for Summary Judgment;
  ● Nova's Motion for Reconsideration;
  ● Turner's Response to Nova's Motion for Reconsideration;
  ● Nova's Reply in Support of Motion for Reconsideration;
  ● Turner's Cross–Reply to Nova's Reply in support of Nova's Motion for Reconsideration; and
  ● The parties' Stipulations[.]

entered its final judgment. As is relevant here,[2] the trial court ordered in its final judgment that Turner recover from Nova (1) $415,000, representing the full penal sum of the performance bond; (2) attorneys' fees of $314,000 for services rendered through judgment; and (3) pre-judgment interest on the attorney's fees Turner had "paid ... to its attorneys" in the amount of $14,564.38. This appeal timely ensued thereafter.

## ANALYSIS

### A. Standard of Review and Applicable Law

We review a grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *see also Knott*, 128 S.W.3d at 216. When both sides have moved for summary judgment, and the trial court has granted one motion and denied the other, we will review the summary judgment arguments and evidence presented by both sides and determine all questions raised therein. *See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex.*, 253 S.W.3d

184, 192 (Tex.2007). In such a situation, we will render the judgment that the trial court should have rendered. *Id.*

The construction of a surety agreement is a question of law. *Frost Nat'l Bank v. Burge*, 29 S.W.3d 580, 591 (Tex.App.-Houston [14th Dist.] 2000, no pet.). The liability of the surety is generally determined by the language of the bond. *Geters v. Eagle Ins. Co.*, 834 S.W.2d 49, 50 (Tex.1992). Surety agreements are strictly construed, and sureties are bound only by the precise terms of the contract that they have secured. *See Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464 (Tex. 1991). With these principles in mind, we turn to the issues presented by Nova.

### B. Turner Was Not Required to Terminate BOCA to Trigger Nova's Performance Obligations

In its first issue, Nova asserts that "[b]oth the performance bond and the subcontract required that Turner terminate BOCA from the subcontract before Turner could recover on the bond." We disagree. First, the performance bond itself does not provide that Turner must "terminate" BOCA. Rather, as excerpted above, the bond states that if BOCA is in default and Turner declares it in default under the subcontract, Nova's obligations under the bond are triggered.[3] The par-

---

2. The trial court entered a final default judgment against BOCA and awarded Turner damages in its judgment, as well. The trial court also ordered Nova to pay Turner's appellate attorneys' fees if Nova unsuccessfully appealed. Finally, the trial court ordered pre-judgment interest on the amount of the penal sum of the bond.

3. Nova agrees that the performance bond does not explicitly require termination before its obligations under the bond were triggered. However, it relies on out-of-state authority for its proposition that we should imply such a requirement into the bond at issue here. *See, e.g., L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 111 (5th Cir.1994)

(determining, in a case from Mississippi, that a principal's "declaration of default sufficient to invoke the surety's obligations under the bond must be made in clear, direct, and unequivocal language"). The *L & A* court went on to state: "The declaration must inform the surety that the principal has committed a material breach or series of material breaches of the subcontract, that the obligee regards the subcontract as terminated, and that the surety must immediately commence performing under the terms of its bond." *Id.* Here, as noted above, Turner specifically notified Nova of BOCA's default "per the terms of the bond." Turner further requested that Nova immediately contact Turner to resolve payment issues for labor and material on the

ties stipulated that BOCA abandoned the project on December 14, 2004. Further, Nova does not dispute that the day after BOCA abandoned the project, Turner notified it that BOCA had defaulted on the subcontract. Thus, based on the plain language of the performance bond, Nova's obligations under the bond were triggered when Turner notified it that BOCA was in default.

■ Nova contends, however, that under the subcontract, Turner could recover from BOCA or Nova any costs in excess of the unpaid balance of the subcontract price only if Turner first terminated BOCA. However, Turner's remedies in Article XI, excerpted above, were available to Turner *in addition to* any other rights and remedies provided by the subcontract or under the common law. As noted *supra*, Article III of the subcontract requires BOCA *and its surety* to compensate Turner for any "costs, expenses, damages, and liability" caused by BOCA's delay in completion of the project. Clearly, BOCA's abandonment of the project delayed the project and caused Turner to incur costs and expenses.

Further, the performance bond provides that Turner, after reasonable notice to Nova may arrange for the performance of BOCA's obligations under the subcontract. In such a case, the bond provides, "If completed by [Turner], and the reasonable cost exceeds the balance of the subcontract price, *[Nova] shall pay to [Turner] such excess* . . . ." (emphasis added). Thus, strictly construing the surety agreement and considering the precise language of the subcontract, we conclude that the trial

court properly granted summary judgment to Turner on this basis. *See Vastine,* 808 S.W.2d at 464. We overrule Nova's first issue.

## C. Turner Provided Reasonable Notice of BOCA's Default to Nova

■ In its second issue, Nova contends that summary judgment was improper because Turner failed to give Nova notice of BOCA's default sufficient to enable Nova to exercise its performance options under the bond. Specifically, Nova argues that, because Turner had already made arrangements for the performance of some of BOCA's contractual obligations before it notified Nova that BOCA was in default, Turner failed to comply with the plain terms of the performance bond, thereby rendering the bond null and void.

Nova agrees that it is bound by both the bond and the language of the underlying contract between BOCA and Turner. *See id.* Here, the contract gave Turner two options upon BOCA's default: (1) to step in and supplement BOCA's work and deduct any expenses from the amount owed under the contract; or (2) terminate the contract and take over the project. Turner initially chose to supplement BOCA's work in an effort to keep the project moving forward so that it could complete the entire contract with the City in a timely fashion. This option is expressly contemplated and permitted under the plain language of the contract between BOCA and Turner. Nova was presumably aware of this subcontract option when it entered into the performance bond, which explicitly

---

project. We conclude that the facts of this case are significantly different from the facts of *L & A,* in that the obligee in *L & A* never provided notice to the surety that the principal was in "default." *See id.* (explaining that none of the correspondence sent to the principal and surety contained the word "default," nor was an unequivocal declaration of default

contained in any of the correspondence). Furthermore, Texas courts do not imply terms into unambiguous contracts for which the parties have not bargained. *See Wolf Hollow I, L.P. v. El Paso Mktg., L.P.,* 329 S.W.3d 628, 635–36 (Tex.App.-Houston [14th Dist.] 2010, no pet. h.) (citing *Tenneco, Inc. v. Enter. Prods. Co.,* 925 S.W.2d 640, 646 (Tex.1996)).

incorporated the subcontract into its terms. *See, e.g., In re Lyon Fin'l Servs., Inc.,* 257 S.W.3d 228, 232 (Tex.2008) (orig. proceeding) (stating that a party who signs an agreement is presumed to know its contents, as well as the contents of documents incorporated by reference). We disagree that Turner's exercise of one of its options under the subcontract—secured by and incorporated into the performance bond—rendered the bond null and void.[4]

■ Further, the parties stipulated that BOCA abandoned the project on December 14, 2004. Turner notified Nova that BOCA had defaulted *per the terms of the bond* the next day. "After a declaration of default, the relationship [between sureties, principals, and obligees] changes dramatically, and the surety owes immediate duties to the obligee." *L & A Contracting Co. v. S. Concrete Servs., Inc.,* 17 F.3d 106, 111 (5th Cir.1994). Rather than notifying Turner that it planned to promptly remedy the default as provided by the performance bond, Nova hired Forcon to investigate the default.

Nova complains in this issue that, because Turner undertook completing the project itself, Nova was denied the opportunity to mitigate damages, which rendered the bond unenforceable. However, Nova's options under the bond were to promptly remedy the default or, *upon demand of Turner,* to arrange for the performance of BOCA's contractual obligations. Nova gave no indication to Turner that it intended to "promptly remedy" BOCA's default. Further, instead of demanding that Nova arrange for performance of BOCA's obligations, Turner arranged for performance of BOCA's obligations itself, which the plain language of the bond permitted Turner to do.[5]

Under these circumstances, we conclude that Turner provided Nova reasonable notice of BOCA's default. Accordingly, we overrule Nova's second issue.

## D. Attorney's Fees and Pre-judgment Interest

■ In its third and final issue, Nova argues that (a) Turner was not entitled to

**4.** Nova cites several out-of-state cases for the proposition that an obligee materially breaches the terms of a performance bond by failing to give a surety sufficient notice of the principal's default to enable the surety to select its performance options. *See L & A Contracting Co.,* 17 F.3d at 111; *Elm Haven Constr. L.P. v. Neri Constr. LLC,* 376 F.3d 96, 101 (2d Cir. 2004); *Hunt Constr. Group Inc. v. Nat'l Wrecking Corp.,* 542 F.Supp.2d 87, 95–96 (D.D.C.2008) (mem. op.). Not only are none of these cases controlling precedent, but they are all easily distinguishable. For example, in *L & A Contracting,* the obligee never properly notified the surety that the principal was in default under the terms of the performance bond. *L & A Contracting Co.,* 17 F.3d at 111. The court in *Elm Haven* relied on *L & A Contracting* and another Second Circuit case in which the language of the performance bond required that the obligee terminate the principal as a condition precedent to the sureties' obligations under the bond to determine that termination of the principal was re-

quired. *Elm Haven,* 376 F.3d at 100 (citing *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,* 369 F.3d 34, 57 (2d Cir.2004) (requiring termination of principal as condition precedent to sureties' obligations under bond) and *L & A Contracting,* 17 F.3d at 111). In *Hunt Construction,* the principal failed to notify the surety that the principal was in default until *after* it had completed the work required under the subcontract. *See Hunt Constr. Group,* 542 F.Supp.2d at 89, 91–92.

**5.** Whether any of the costs Turner incurred prior to notifying Nova that BOCA was in default under the terms of the bond were recoverable from the bond funds or whether Turner's costs in completing BOCA's contractual obligations were reasonable are not issues before this court. Moreover, the parties stipulated that, even if Turner had given timely notice, damages to Turner under the bond, if due, would exceed the penal sum of the bond.

attorney's fees because summary judgment was improper and (b) the trial court erroneously awarded pre-judgment interest on attorney's fees paid by Turner before judgment. We have determined that the trial court properly granted summary judgment to Turner on its claims against Nova. Thus, we consider only whether the trial court erred in awarding pre-judgment interest on the awarded attorney's fees Turner paid prior to the entry of judgment.[6]

There appears to be a split of authority among the Courts of Appeals regarding the award of pre-judgment interest on attorney's fees paid before judgment. *See Carbona v. CH Med., Inc.*, 266 S.W.3d 675, 688 (Tex.App.-Dallas 2008, no pet.) (pre-judgment interest cannot be recovered on attorney's fees under any circumstances); *Williams v. Colthurst*, 253 S.W.3d 353, 362 (Tex.App.-Eastland 2008, no pet.) (allowing award of pre-judgment interest on fees paid prior to judgment in a breach of lease case); *A.V.I., Inc. v. Heathington*, 842 S.W.2d 712, 717 (Tex.App.-Amarillo 1992, writ denied) (permitting recovery of pre-judgment interest on fees actually paid prior to judgment in DTPA case). This court has previously observed in an unpublished opinion that "if [the plaintiff] had paid her attorney prior to the trial court's judgment, she would be entitled to pre-judgment interest on that amount." *Life Ins. Co. of N. Am. v. Kilhafner*, No. 14–96–00850–CV, 1998 WL 340288, at *5 (Tex. App.-Houston [14th Dist.] Jun. 18, 1998, no pet.) (not designated for publication). More recently, we have stated that an award of equitable pre-judgment interest on attorney's fees is within the trial court's discretion. *See Kurtz v. Kurtz*, No. 14–08–

00351–CV, 2010 WL 1293769, at *11 (Tex. App.-Houston [14th Dist.] Apr. 6, 2010, no pet.) (mem. op.). In light of this authority, we cannot say the trial court abused its discretion in awarding pre-judgment interest on attorney's fees that Turner had already paid prior to the trial court's entry of judgment. We therefore overrule Nova's third and final issue.

For the foregoing reasons, we affirm the trial court's judgment.

---

6. We note that Nova erroneously relies on Texas Finance Code section 304.102 for its proposition that pre-judgment interest accrues only on the amount of "judgment." Tex. Fin.Code Ann. § 304.102 (West Supp. 2009). This section of the Finance Code explicitly applies only to cases involving wrongful death, personal injury, or property damage. *Id.* Thus, it is inapplicable in this breach of contract case.