

NUMBER 13-14-00428-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

ALMA INVESTMENTS, INC.,                                              Appellant,

v.

BAHIA MAR CO-OWNERS
ASSOCIATION, INC.,                                                      Appellee.

**On appeal from the 197th District Court
of Cameron County, Texas.**

# O P I N I O N

**Before Justices Garza, Benavides, and Longoria
Opinion by Justice Benavides**

By three issues, appellant Alma Investments, Inc. ("Alma") appeals the trial court's

judgment rendered in favor of appellee Bahia Mar Co-Owners Association, Inc. ("the Co-

Owners"). Alma asserts that the trial court (1) abused its discretion by ordering death

penalty sanctions against Alma prior to the trial on the merits in this case; (2) erred by

allowing the Co-Owners to recover attorneys' fees; and (3) erred by awarding prejudgment interest on the award of attorneys' fees.   We affirm.

## I.   BACKGROUND

The lengthy underlying litigation in this case stems from the determination of certain rights, obligations, and liabilities of the parties and their relationships to a South Padre Island-based condominium regime known as the Bahia Mar.

In 2006, the Co-Owners filed suit seeking damages against Alma and Bahia Mar Maintenance Association ("the Maintenance Association"), alleging that Alma breached its contract as the owner of a 126-unit condominium regime located at Bahia Mar by failing to pay monthly assessments to the Maintenance Association, which was tasked with maintaining the common areas of the complex.   Additionally, the Co-Owners alleged that the Maintenance Association was negligent for failing to collect assessments from Alma. It appears undisputed from the record that at all relevant times, Alma owned the Maintenance Association.   Alma and the Maintenance Association subsequently answered the Co-Owners' lawsuit by filing a general denial, and also asserting various affirmative defenses and counterclaims against the Co-Owners.

On November 4, 2009, the Co-Owners filed a motion to audit the Maintenance Association's books and records pursuant to property code section 81.209.   *See* TEX. PROP. CODE ANN. § 81.209 (West, Westlaw through 2015 R.S.) (providing a statutory scheme for the keeping and auditing of financial and accounting records of a condominium regime).   On January 19, 2010, the trial court granted the Co-Owners' motion for audit and ordered that the Maintenance Association's books and records be audited by a court-appointed independent auditor for the years 2000 through 2008.

2

Further, the trial court ordered that Alma pay the auditor for conducting the audit.

On March 26, 2010, the Co-Owners filed their tenth amended original petition (the live pleading at trial) asserting causes of action for: (1) a declaratory judgment that the Maintenance Association, as run by Alma, is contrary to public policy and void because it did not protect the interests of the units' owners, and the contract between the Co-Owners and the Maintenance Association is unconscionable and, thus, unenforceable; (2) breach of contract by the Maintenance Association and Alma pursuant to the maintenance agreement in place, including the failure to make expenditures of the Maintenance Association funds in good faith and failure on Alma's part to pay monthly maintenance payments as required under the maintenance agreement; (3) breach of fiduciary duty by Alma as "[o]wner, [a]dministrator, [d]irector, and [d]ictator of the [m]aintenance [f]und . . . to properly utilize the funds that members pay to the Maintenance Association"; (4) fraud by Alma related to misrepresentations by Alma to the Co-Owners that Alma had paid maintenance assessments, when it had not; and (5) negligence and negligence per se for failing to maintain property insurance on the property.

On April 1, 2010, after considering the Co-Owners' motion to compel the audit, the trial court ordered Alma to deposit $10,000 into the registry of the court by April 30, 2010 in relation to the costs associated with the court-ordered audit. Further, the trial court ordered Alma and the Maintenance Association to produce all books and records from 2004 through 2008 to the court-appointed auditor.

On December 6, 2011, after issues arose related to the taking of depositions of representatives for Alma and the Maintenance Association, the trial court ordered, among other things, that the parties: (1) "cooperate in finding a mutually agreeable, alternative

3

venue for the taking of depositions for [Alma's and the Maintenance Association's] agents, consultants or employees and that such depositions shall be taken in the place of each deponents' residency, or via telephone, or video conferencing technology acceptable to the Court"; and (2) "use all reasonable prudence and cooperation in completing the following three . . . depositions of [Alma and the Maintenance Association personnel], . . . (a) Khalil Pakideh; (b) Martin Pakideh and (c) Alma's corporate representative previously deposed."

On April 11, 2012, the trial court granted the Co-Owners' motion to enforce the trial court's previous order granting its motion to compel an audit. Additionally, the trial court ordered that the court-appointed auditor "conduct an audit for the calendar year 2005" at Alma's expense. To pay for the audit, the trial court ordered Alma to deposit $20,000 with the registry of the court no later than July 16, 2012.

On August 23, 2012, the trial court conducted a status hearing. At the hearing, the parties argued that the video conferencing equipment, as ordered on December 6, 2011, was unavailable for the parties to use in order to conduct the requested depositions. As a result, the trial court ordered the Pakidehs to be deposed at the Co-Owners' counsel's office on September 28, 2012.

On October 25, 2012, Kahlil and Martin Pakideh each filed a motion to quash the Co-Owners' notice of their oral depositions on grounds that: (1) neither is the corporate representative of Alma; and (2) the deposition of Alma's corporate representative had already taken place. Five days later, the Co-Owners filed a motion for contempt and motion for sanctions for Alma's alleged violation of the trial court's April 11, 2012 order requiring Alma to deposit $20,000 with the registry of the court, and the trial court's

4

September 6, 2012 order regarding the Pakidehs' depositions.

On December 13, 2012, the trial court held a hearing on the Pakidehs' respective motions to quash, as well as the Co-Owners' motion for contempt and sanctions. After the hearing, the trial court ordered in relevant part that both Kahlil Pakideh and Martin Pakideh appear for depositions at the Co-Owners' attorney's office on January 25, 2013.

On January 7, 2013, counsel for Alma again filed two motions to quash the Co-Owners' first amended notices of oral and/or videotaped depositions to take place on January 25, 2013 for both Martin Pakideh and Kahlil Pakideh. Martin and Kahlil asserted in their respective motions that the date and time of the deposition was not coordinated with Martin nor Kahlil. Furthermore, both asserted that they are not residents of Cameron County, but instead are residents of Monroe County, Michigan. However, both agreed to have their depositions taken in Monroe County, Michigan at the Co-Owners' expense. In response, the Co-Owners' filed their first amended motion for contempt and motion for sanctions for violation of court orders. In their motion, the Co-Owners asked the trial court to enter death penalty sanctions against Alma and grant the Co-Owners' motion to strike Alma's pleading and grant a default judgment in the Co-Owners' favor against Alma due to Alma's "failure to comply with basic court orders that it does not intend to be responsive in litigating this case." In the alternative, the Co-Owners requested that Alma be ordered "to pay $15,000.00 to [the Co-Owners] representing the cost and expense that [the Co-Owners have] gone through in attempting to take the depositions of Kahlil Pakideh who is the owner of [Alma] and his son Martin Pakideh . . . and in attempting to obtain compliance with the court's order requiring an audit and deposit of funds." Additionally, and in the alternative, the Co-Owners requested that the

5

trial court "confine Kahlil Pakideh in jail until such time as he causes [Alma] to pay the $15,000.00 sanction/contempt to [the Co-Owners] and until such time as [Alma] pays the $20,000.00 to the registry of the Court so that the audit can resume."

After hearing each respective motion, as well as arguments from counsel, the trial rendered an order: (1) striking Alma's defenses "as death penalty sanctions in this case"; (2) awarding default judgment as to liability in favor of the Co-Owners and against Alma; and (3) stating that any remaining issues of damages related to the Co-Owners' claims against Alma shall be tried before a jury. On January 9, 2014, the trial court entered an order of nonsuit as to any and all counter-defendants and/or third-party defendants listed by Alma. Additionally, at the start of the trial on the merits, the Co-Owners nonsuited the Maintenance Association. Thus, the only two parties proceeding forward at trial were Alma and the Co-Owners.

At trial, evidence and testimony was received by the jury with regard to the fees that were charged to the Co-Owners by Alma for managing the Maintenance Association. Additionally, the jury heard evidence related to the attorneys' fees owed to the Co-Owners' attorneys. After deliberations, the jury awarded the Co-Owners $449,712.00 for the amount of fees charged by Alma for managing the Maintenance Association from 2002 through 2007. Additionally, the jury awarded the Co-Owners' attorneys' fees in the amount of $291,000 for representation in the trial court; $20,000 through appeal to the court of appeals; $10,000.00 for representation at the petition for review stage in the Texas Supreme Court; $10,000.00 for representation at the merits briefing stage in the Texas Supreme Court; and $10,000 for representation through oral argument and the completion of proceedings in the Texas Supreme Court. On April 24, 2014, the trial court

6

entered a final judgment in this case pursuant to the jury's findings. This appeal followed.

## II. DEATH PENALTY SANCTIONS

By its first issue, Alma asserts that the trial court's death penalty sanction amounted to an abuse of discretion.

### A. Standard of Review and Applicable Law

We review the imposition of sanctions under an abuse of discretion standard. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). The test for whether a trial court abuses its discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *See Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004). The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *See id.*

Texas Rule of Civil Procedure 215.2 permits a trial court to sanction a party for failing to "comply with proper discovery requests or to obey an order to provide or permit discovery. . . ." *See* TEX. R. CIV. P. 215.2(b). Among the sanctions available to a trial court in this situation is:

> an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing with or without prejudice the action or proceedings or any part thereof, or rendering a judgment by default against the disobedient party

*Id.* R. 215.2(b)(5). A sanction ordered under Rule 215.2(b)(5) that terminates the presentation of the merits of a party's claims is also known as a "death penalty" discovery sanction. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 845 (Tex. 1992) (orig.

7

proceeding).

In any event, whichever permissible sanction is ordered by a trial court under Rule 215.2(b), it must be done after notice and hearing and must be "just." TEX. R. CIV. P. 215.2(b); *see TransAm. Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). The determination of whether an imposition of sanctions is just is measured by two standards. *TransAm.*, 811 S.W.2d at 917. First, a direct relationship must exist between the offensive conduct and the sanction imposed. *Id.* Second, just sanctions must not be excessive. *Id.* The imposition of very severe sanctions is limited, not only by these standards, but by constitutional due process. *Id.* Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.* at 918. However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and may dispose of it. *Id.* Lastly, although punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions, unless a party acts in flagrant bad faith, or its counsel shows callous disregard for the responsibilities of discovery under the rules. *See id.*

## B. Discussion

In the present case, Alma argues that the trial court abused its discretion in ordering death penalty sanctions against it because: (1) there is no direct relationship between the conduct at issue and the sanction; (2) the sanction is excessive relative to the conduct at issue; (3) the trial court failed to attempt or even consider alternative, lesser sanctions; and (4) Alma's conduct cannot support the presumption that its defenses

8

lacked merit.   We disagree with each argument and will address each in turn.

### 1.  Direct Relationship

Alma contends that because the trial court lacked power to order the Pakidehs to come to Texas to be deposed in the first place, as well as because of Alma's financial inability to pay the $20,000 deposit to conduct the court-ordered audit, there is no direct relationship between the sanction and the conduct at issue.   Under this prong of whether a sanction is just, we look at whether the trial court directed the sanction against the abuse and toward remedying the prejudice caused to the innocent party.   *See id.* at 917.   The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.   *Id.*   This means that while a lawyer cannot shield his client from sanctions, a party must also bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules, but a party should not be punished for its counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. *Id.*

The record shows that on December 6, 2011, the trial court first became involved with the issue of taking the Pakidehs' depositions, when it ordered the parties to "cooperate" in coordinating and finding a "mutually agreeable" venue to take the Pakidehs' depositions.   This order also allowed for the depositions to be taken "via telephone, or video conferencing technology acceptable to the Court."   Furthermore, on April 11, 2012, Alma was ordered to deposit $20,000.00 into the registry of the court to pay for the audit requested by the Co-Owners.

9

On August 23, 2012, the trial court conducted a status hearing in which Alma was not represented by licensed Texas counsel; however, arguments were made on its behalf by counsel for another management company that was involved in the earlier portion of this litigation.[1]   At the hearing, Alma did not lodge any particular objection with regard to the necessity of the depositions or express any resistance to the taking of the depositions. Instead, only the logistics of taking the depositions was discussed because the Pakidehs resided in Michigan.   To settle this particular dispute, the trial court ordered the Pakidehs to appear for depositions at the Co-Owners' counsel's office on September 28, 2012, unless agreed otherwise.

Alma first raised a complaint regarding the notices of deposition for the Pakidehs on October 25, 2012, when it filed motions to quash the notices of deposition that were scheduled for November 28, 2012.   On December 18, 2012, the trial court again ordered that the Pakidehs appear for depositions, this time at the office of the Co-Owners' counsel by January 25, 2013. Again, Alma's counsel filed motions to quash deposition notices sent by the Co-Owners to the Pakidehs.   Despite two court orders that ordered depositions to be taken, the Pakidehs through counsel continued to resist and refused to obey the trial court's orders regarding their depositions.   Additionally, no issue was raised by Alma regarding its inability to pay the $20,000 until the April 25, 2013 hearing—slightly more than one year after it was ordered—when Alma's counsel argued that "Alma doesn't have any money."   Based on this record, the trial court was within its discretion to find that a direct relationship existed between Alma's offensive conduct and the

---

[1] This attorney represented Alma in later proceedings and at trial.

sanction imposed.

## 2. Excessiveness of Sanction and Lesser Alternatives

Next, Alma argues that the sanctions ordered in this case are excessive relative to the conduct at issue. In a related argument, Alma argues that the trial court also "failed to attempt or even properly consider alternative lesser sanctions." When deciding whether discovery abuse sanctions are excessive, we look at whether the sanction is no more severe than necessary to satisfy its legitimate purpose and consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.* Stated another way, "The punishment should fit the crime." *Id.*

The conduct at issue here is in direct violation of standing orders by the trial court. The trial court twice ordered the Pakidehs to appear for depositions, but both orders were not followed. Additionally, the trial court ordered Alma to deposit $20,000 in the registry of the court to pay an auditor to audit the Maintenance Association's financial records, which was found necessary for the Co-Owners' case. This order likewise went ignored. Further, the trial court considered lesser alternatives throughout this discovery fight between the parties, by first ordering that the depositions be conducted telephonically or by video conferencing software, then by twice ordering that the Pakidehs appear for their depositions in person at the Co-Owners' counsel's office. While a trial court is required to consider the availability of lesser sanctions or alternatives before imposing death penalty sanctions, it need not test the effectiveness of each available lesser sanction or alternative by actually imposing it on the party before issuing the death penalty. *See Cire*, 134 S.W.3d at 840. In its sanctions order, the trial court noted that it considered lesser sanctions, but concluded that such lesser sanctions would have been ineffective.

11

For example, the trial court found that ordering monetary sanctions would have been ineffective because Alma had "failed and refused to pay" the $20,000 that it had previously ordered it to pay, and that Alma's counsel represented that the company was financially unable to pay it. Moreover, the trial court found that a third order compelling the Pakidehs' depositions would have been ineffective, as Alma demonstrated its unwillingness to follow the previous two orders. Therefore, in light of the entire record and the utilization of less stringent sanctions imposed by the trial court, we hold that the sanctions were not excessive. Further, not only did the trial court consider lesser sanctions in this case, but it imposed them, and found them to be ineffective.

### 3. Alma's Defenses Lacking Merit

Lastly, Alma argues that the conduct in this case "cannot support a presumption that [Alma's] defenses lack merit." The substance of the Co-Owners' complaints in this lawsuit centers on Alma's conduct when it managed the Maintenance Association of the Bahia Mar condominium complex. The Pakidehs admitted in affidavits filed alongside their respective motions to quash that they owned Alma. Furthermore, the trial court found that Alma refused to allow an audit of its financial books. The Co-Owners sought to take the Pakidehs' depositions in order to discover evidence related to Alma's business operations for the relevant periods of their ownership of the company. However, Alma's actions over the course of the litigation and discovery process hindered the Co-Owners from conducting such discovery, which justifies a presumption that its claims or defenses lack merit. *See TransAm.*, 811 S.W.2d at 918.

### 4. Summary

In sum, we hold that: (1) the imposition of death penalty sanctions in this case was

just because it directly related to the conduct at issue in case—that is, violating the trial court's orders and hindering the discovery process for the Co-Owners; (2) the sanction was not excessive, and the trial court properly considered lesser sanctions; and (3) the conduct here justified a presumption that Alma's defenses lacked merit. *TransAm.*, 811 S.W.2d at 917. Accordingly, the trial court did not abuse its discretion in ordering death penalty sanctions in this case. Alma's first issue is overruled.

### III.    ATTORNEYS' FEES

By its second issue, Alma asserts that the Co-Owners are not entitled to an award of attorneys' fees through their request for declaratory relief. We interpret this issue solely as a question of whether the Co-Owners were entitled to an award of attorneys' fees.

### A.  Standard of Review

The availability of attorneys' fees under a particular statute is a question of law for the court which we review de novo. *Holland v. Wal-Mart*, 1 S.W.3d 91, 94 (Tex. 1999).

### B.  Discussion

Alma argues that the Co-Owners improperly used the Declaratory Judgments Act solely to obtain attorneys' fees. We disagree. The dispositive question here is whether the Co-Owners properly asserted a claim for declaratory relief under Chapter 37 of the civil practice and remedies code, which would entitle them to attorneys' fees. *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011 (West, Westlaw through 2015 R.S.). Consequently, the jury's finding regarding the amount of reasonable and necessary attorneys' fees in this case is immaterial to our inquiry as to whether such fees are recoverable as a matter of law. When a party pursues an action for declaratory relief,

the trial court may award costs and reasonable and necessary attorney's fees as are equitable and just. *Id.* § 37.009. However, the Declaratory Judgments Act cannot be invoked when it would interfere with some other exclusive remedy or some other entity's exclusive jurisdiction. *MBM Fin. Corp. v. Woodlands Op. Co.,* 392 S.W.3d 660, 669 (Tex. 2009). Additionally, a party cannot use the Declaratory Judgment Act as a vehicle to obtain otherwise impermissible attorney's fees. *Id.*

The Co-Owners' tenth amended petition, their live petition at trial, asserted a requested declaratory judgment declaring that: (1) the Maintenance Association, run by Alma, "is contrary to public policy and void" because Alma did not allow any votes by its members and operated without a board of directors or any officers, counter to various provisions of the Texas Property Code; and (2) the contract between the Co-Owners and the Maintenance Association "is unconscionable and, thus, unenforceable." Additionally, the Co-Owners alleged a cause of action for Alma's breach of a fiduciary duty and fraud.

This pleading shows that the Co-Owners' request for declaratory relief was separate and apart from any other cause of action or claim for relief. Specifically, this claim for declaratory relief relates to Alma's actions through the Maintenance Association to effectively deny giving any of the Co-Owners "any voice or any vote" in the association. Based on the pleading, we hold that the Co-Owners properly invoked the Declaratory Judgments Act, and were therefore entitled to attorneys' fees under it. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Furthermore, we are unpersuaded by Alma's argument that the declaratory judgment claim in this case was "pretextual" because there was "no real controversy between the parties with respect to the operation of [the

14

Maintenance Association]" because Alma was no longer involved in the operation of the Maintenance Association at the time of trial.   The undisputed fact that Alma no longer operated the Maintenance Association does not render the controversy moot because the Co-Owners' claim for attorneys' fees under the Declaratory Judgments Act remained pending, as it related to Alma's actions regarding the Co-Owners' voting rights under the property code.   *See Hansen v. JP Morgan Chase Bank, N.A.*, 346 S.W.3d 769, 774–75 (Tex. App.—Dallas 2011, no pet.) (holding that "a case under the Declaratory Judgments Act remains a live controversy, even if all requests for substantive declaratory relief become moot during the action's pendency, as long as a claim for attorneys' fees under the Act remains pending").

We overrule Alma's second issue.

### IV.   PREJUDGMENT INTEREST

By their third and final issue, Alma contends that the trial court erred by awarding prejudgment interest on the Co-Owners' award of segregated attorneys' fees.

### A.  Standard of Review and Applicable Law

We review a trial court's award of prejudgment interest for an abuse of discretion, giving limited deference to the lower court's application of the law to the facts.   *Morales v. Morales*, 98 S.W.3d 343, 348 (Tex. App.—Corpus Christi 2003, pet. denied).

The answer to the question of whether prejudgment interest may be calculated on attorneys' fees that have been paid prior to judgment, as in this case, is less than clear, with our sister courts splitting on the issue, and the supreme court remaining silent.   The Dallas Court of Appeals has expressly held that under no circumstances may prejudgment interest be recovered on attorneys' fees.   *See Carbona v. CH Med., Inc.*,

15

266 S.W.3d 675, 688 (Tex. App.—Dallas 2008, no pet.). However, other courts have taken a less rigid view and have allowed a trial court to award prejudgment interest on attorneys' fees paid prior to judgment. *See Nova Cas. Co. v. Turner Const. Co.*, 335 S.W.3d 698, 706 (Tex. App.—Houston 2011, no pet.) (holding that the trial court did not abuse its discretion in awarding prejudgment interest on attorney's fees paid prior to the entry of judgment); *Williams v. Colthurst*, 253 S.W.3d 353, 362 (Tex. App.—Eastland 2008, no pet.) (allowing recovery of prejudgment interest on attorney's fees paid prior to the entry of judgment); *A.V.I., Inc. v. Heathington*, 842 S.W.2d 712, 717 (Tex. App.—Amarillo 1992, writ denied) (permitting an award of prejudgment interest on a portion of attorney's fees paid prior to the entry of judgment).

This Court has not taken a direct position on the issue; however, our past decisions indicate an inclination to follow the approach of the Houston, Eastland, and Amarillo courts. As a general rule, this Court has held that "prejudgment interest is not recoverable on attorneys' fees awarded." *Berry Prop. Mgmt., Inc. v. Bliskey*, 850 S.W.2d 644, 670 (Tex. App.—Corpus Christi 1993, writ dism'd by agr.). However, the proposition set forth in *Berry* is distinguishable from the present case because the *Berry* case involved a fact scenario in which attorneys' fees had not yet been paid and were awarded pursuant to the Texas Deceptive Trade Practices Act ("DTPA"). *See* 850 S.W.2d at 671 (noting that the attorneys fee agreement in this case provided that "that, in consideration for services, Bliskey would pay her attorneys 33 ⅓% of all monies, interest, or property recovered."). Likewise, in another DTPA case, we held that prejudgment interest is not allowed on an award of attorneys' fees; however, we specifically noted that "there is no evidence that any of the trial attorney fees had accrued as damages to [the

16

plaintiff] *prior to judgment*," and overruled the issue on those grounds. *See Sw. Bell Tel. Co. v. Vollmer*, 805 S.W.2d 825, 834 (Tex. App.—Corpus Christi 1991, writ denied) (emphasis added), *disapproved of on other grounds by Houston Lighting & Power Co. v. Auchan USA, Inc.*, 995 S.W.2d 668, 675 (Tex. 1999).

In any event, nothing in *Berry*—or to a lesser extent *Vollmer*—prohibits us from holding that prejudgment interest may be ordered when attorneys' fees have been paid prior to the entry of judgment. By our decision today, we reaffirm our Court's holding that prejudgment interest is not recoverable on attorneys' fees awarded. However, we join our sister courts in holding that as an exception to this general rule, prejudgment interest is recoverable on attorneys' fees that have been paid prior to the entry of judgment. *See Nova Cas. Co.*, 335 S.W.3d at 706; *Williams*, 253 S.W.3d at 362; *Heathington*, 842 S.W.2d at 717.

**B. Discussion**

Here, the evidence showed that the Co-Owners paid their attorneys $314,928.00 through December 2013 related to this litigation. Counsel for the Co-Owners testified and requested that the jury award them $291,000 in reasonable and necessary attorneys' fees for representation in the trial court. It is undisputed that these fees had been paid by the Co-Owners prior to judgment. Accordingly, we conclude that the trial court acted within its discretion by ordering prejudgment interest on the $291,000 in reasonable and necessary attorneys' fees paid by the Co-Owners prior to final judgment in this case. *See Nova Cas. Co.*, 335 S.W.3d at 706; *Williams*, 253 S.W.3d at 362; *Heathington*, 842 S.W.2d at 717. Alma's third and final issue is overruled.

17

## V.  CONCLUSION

We affirm the trial court's judgment.

GINA M. BENAVIDES,
Justice

Delivered and filed the
16th day of June, 2016.