

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-20-00404-CV

---

IN THE ESTATE OF STEVEN STAVRON, DECEASED

---

On Appeal from Probate Court No. 1
Tarrant County, Texas
Trial Court No. 2013-PR00606-1-C

---

Before Sudderth, C.J.; Womack and Walker, JJ.
Memorandum Opinion by Justice Womack

# MEMORANDUM OPINION

## I. INTRODUCTION

This is an appeal from a probate court judgment against Appellant Serafim Stavron awarding Appellee Louis Papaliodis attorney's fees. We will affirm.

## II. BACKGROUND

In March 2013, Stavron was appointed the temporary administrator of the estate of his deceased father. According to attorney Papaliodis, that same month, he and Stavron also "entered into a valid and enforceable contract," and Papaliodis thereafter "fully performed his contractual obligations by representing Stavron and by representing the estate until Stavron ultimately located counsel to assist with his contesting of the 2013 will" of the decedent.

Stavron entered into a mediated settlement agreement in August 2014 with the proponents of the 2013 will, whereby the parties agreed to admit the 2013 will to probate and to take certain other actions with regard to the estate. However, the attorney's fees of Papaliodis were not mentioned in the settlement agreement.

Also in August 2014, Papaliodis filed a claim—the "Account for Final Settlement"—against the estate in the amount of $76,917.47 for his attorney's fees. Ultimately, Greg Shannon, the successor temporary administrator of the estate, rejected Papaliodis's claim. In his "Memorandum of Rejection and Objections to Claim," Shannon set out several reasons for rejecting the claim, including that the

attorney's fees which were sought "reflect a prolonged legal battle, and only a portion of the fees at issue relate to the administration of the estate."

Papaliodis ultimately filed suit against Shannon as successor temporary administrator and against Stavron "individually and as Prior Temporary Administrator," contending that "Stavron never paid for the services he received on behalf of the estate." Papaliodis contended that his services "were reasonable and necessary for the management, preservation, and safekeeping of the Estate, and a benefit to the Estate and to [ ] Stavron individually." With regard to the suit against Stavron individually, Papaliodis explained that "Stavron represented to [ ] Papaliodis that if there was any problem with the estate paying for his services, that he (Stavron) would take care of it." He alleged causes of action for his rejected claim and for quantum meruit, breach of contract, fraud, and declaratory relief. With regard to the declaratory judgment claim, Papaliodis sought "a declaration of his rights to determine his classification as a creditor of the estate." In addition, he sought a declaration of "what effect, if any[,] the August 29, 2014 Settlement Agreement, entered into by [ ] Stavron and the proponent of the 2013 Will[,] have on his status as a creditor, and on his contractual and other claims against the estate, and against Stavron individually and against his sureties."

Prior to trial, Papaliodis settled his claim against Shannon by entering into a compromise settlement agreement wherein Shannon agreed to approve Papaliodis's claim in the amount of $27,000.00 in attorney's fees and $459.97 in expenses as a class

3

2 claim and the amount of $23,000.00 as a class 8 claim, subject to the approval of the probate court.[1] As a result of this settlement, Papaliodis filed a nonsuit as to Shannon, which the probate court later memorialized in a judgment.

The claims against Stavron then proceeded to a bench trial.[2] At trial, Papaliodis and Stavron testified, and fourteen documents were offered into evidence. Ultimately, the trial court entered judgment for Papaliodis against Stavron individually in the amount of $37,712.50. No findings of fact or conclusions of law were requested or filed. Stavron appealed from the judgment, and Papaliodis filed a cross-appeal.

### III. DISCUSSION

On appeal, Stavron raises three issues complaining that the probate court (1) did not have subject-matter jurisdiction over Papaliodis's claims, (2) abused its discretion by overruling his hearsay objection to Papaliodis's attorney billing records, and (3) without the improperly admitted billing records, had insufficient evidence to support its judgment. In his cross-appeal, Papaliodis raises four issues complaining that the probate court erred by (1) awarding an amount for attorney's fees less than

---

[1]*See* Tex. Est. Code Ann. § 355.102 (setting out claims classification and priority of payment); *Hope v. Baumgartner*, 111 S.W.3d 775, 778 (Tex. App.—Fort Worth 2003, no pet.) (explaining that attorney's fees of an unsuccessful will contestant should be classified as a class 8 claim, which includes all claims not described as class 1–7 claims, as opposed to a class 2 claim, which is limited to expenses of administration and expenses incurred in the preservation, safekeeping, and management of the estate).

[2]Although Papaliodis's attorney began trial by telling the trial court that he was proceeding on all claims, by the end he had abandoned quantum meruit.

4

$76,917.47, (2) not awarding prejudgment interest on the principal amount in controversy, (3) not awarding attorney's fees on his efforts to collect his damages, and (4) failing to dispose of all parties and causes of action because the judgment did not address his request for declaratory relief.

## A. Stavron's Issues

### 1. Jurisdiction

In his first issue, Stavron contends that the probate court lacked subject-matter jurisdiction over Papaliodis's lawsuit because it was not a probate proceeding or a matter related to a probate proceeding. We disagree.

As we have stated before, "Texas probate jurisdiction is, to say the least, somewhat complex." *Shell Cortez Pipeline Co. v. Shores*, 127 S.W.3d 286, 292 (Tex. App.—Fort Worth 2004, no pet.) (citing *Palmer v. Coble Wall Tr. Co.*, 851 S.W.2d 178, 180 n.3 (Tex. 1992)). However, in a county in which there is a statutory probate court, the statutory probate court has original jurisdiction of probate proceedings, and all "probate proceedings" must be filed and heard there. Tex. Est. Code Ann. §§ 32.001(a), .002(c). The term "probate proceeding," as used in the Texas Estates Code, includes "an application, petition, motion, or action regarding the probate of a will or an estate administration, including a claim for money owed by the decedent." *Id.* § 31.001(4); *see id.* § 22.029 ("The terms 'probate matter,' 'probate proceedings,' 'proceeding in probate,' and 'proceedings for probate' are synonymous and include a matter or proceeding relating to a decedent's estate.").

5

At the time Papaliodis filed his claim, the probate of Stavron's father's estate was pending in a statutory probate court, Probate Court No. 1 of Tarrant County. *See* Tex. Gov't Code Ann. § 25.2221(c)(1); *see also Narvaez v. Powell*, 564 S.W.3d 49, 57 (Tex. App.—El Paso 2018, no pet.) ("In order for a probate court to assert jurisdiction over matters incident to an estate, a probate proceeding must be pending in the court."). Papaliodis filed suit not only against Stavron but also against Shannon as successor temporary administrator. His first cause of action involved a suit on a rejected claim, which must be brought in the probate court. *See* Tex. Est. Code Ann. § 355.064(a) ("A claim or part of a claim that has been rejected by the personal representative is barred unless not later than the 90th day after the date of rejection the claimant commences suit on the claim in the court of original probate jurisdiction in which the estate is pending.").

Even after the claims against Shannon were nonsuited, claims for what Papaliodis described as "valuable legal services and advanced costs and fees on behalf of the estate" remained pending against Stavron. Even if these claims were not expressly a "probate proceeding," they were certainly ancillary to it and within the jurisdiction of the probate court.

The Estates Code gives a probate court pendent and ancillary jurisdiction "as necessary to promote judicial efficiency and economy." *Id.* § 32.001(b). "Typically, probate courts exercise ancillary or pendent jurisdiction when a close relationship exists between the nonprobate claims and the claims against the estate." *Shell Cortez*

6

*Pipeline Co.*, 127 S.W.3d at 294 (citing *Sabine Gas Transmission Co. v. Winnie Pipeline Co.*, 15 S.W.3d 199, 202 (Tex. App.—Houston [14th Dist.] 2000, no pet.)). In reviewing a probate court's exercise of pendent and ancillary jurisdiction, "the fundamental question [a court must ask] is whether there was a close relationship between [the non-probate claims and the probate proceeding] such that the probate court's exercise of jurisdiction will aid it in the efficient administration of the [estate]." *Schuchmann v. Schuchmann*, 193 S.W.3d 598, 603 (Tex. App.—Fort Worth 2006, pet. denied). However, a probate court has jurisdiction "to resolve ancillary claims against third parties only to the extent that such claims were necessary to resolve claims within its original jurisdiction." *Goodman v. Summit at W. Rim, Ltd.*, 952 S.W.2d 930, 934 (Tex. App.—Austin 1997, no pet.).

Here, the probate court clearly had jurisdiction to consider Papaliodis's claim against Stavron because it was premised on what Papaliodis described as Stavron's "duties as Temporary Administrator, and in managing, preserving, and collecting the assets of the Estate." Even as to the individual claims against Stavron, there was a close relationship between the claim for attorney's fees and the claims against the estate. *See Shell Cortez Pipeline Co.*, 127 S.W.3d at 294. There was evidence that all of the legal fees, in Papaliodis's words, were performed "on behalf of the estate." Stavron filed a sworn claim that stated that, at the time, attorney's fees and court costs advanced by Papaliodis in the amount of $76,917.47 "are presently due and owed by the Estate." Stavron even states in his brief that Papaliodis "represented Stavron in

7

connection with Decedent's estate." While Stavron now contends that Papaliodis's lawsuit "was unrelated to the collection, partition, and distribution of Decedent's estate," his own words belie that contention. Accordingly, we overrule Stavron's first issue.

## 2. Attorney's Fees

In his second issue, Stavron complains that the probate court overruled his hearsay objection to Papaliodis's attorney billing records. In his third issue, he contends that without the erroneously admitted billing records, there is insufficient evidence to support a finding that the fees sought were reasonable and necessary.

### a. Hearsay objection

His hearsay argument centers on two exhibits that contained detailed time entries for Papaliodis's legal services from March 1, 2013, through March 11, 2014, and August 28, 2014, through September 13, 2019. Stavron contends that the exhibits were hearsay and inadmissible under the business-record exception to the hearsay rule because "Papaliodis conceded that the billing records offered were not the original billing records" and that they were "copied from information on notes, [as] separate records, five or six months after the recorded events occurred."

We review a trial court's decision to admit evidence under an abuse-of-discretion standard. *See In re J.F.C.*, 96 S.W.3d 256, 285 (Tex. 2002); *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). A trial court abuses its discretion when it rules without regard for any guiding rules or principles. *Owens-Corning Fiberglas*

8

*Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We must uphold a trial court's evidentiary ruling if there is any legitimate basis for the ruling. *Id.*

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). The business-records exception provides that evidence meeting certain criteria should not be excluded under the hearsay rule. Tex. R. Evid. 803(6). The foundation for the business-records exception has four requirements: (1) the records were made and kept in the course of a regularly conducted business activity; (2) it was the regular practice of the business activity to make the records; (3) the records were made at or near the time of the event that they record; and (4) the records were made by a person with knowledge who was acting in the regular course of business. *Powell v. Vavro, McDonald, & Assocs., L.L.C.*, 136 S.W.3d 762, 765 (Tex. App.—Dallas 2004, no pet.).

In order to admit the two exhibits under the business-records exception to the hearsay rule, Papaliodis testified that the exhibits were (1) invoices "kept in the ordinary course of business"; (2) a "compilation of contemporaneous time sheets" with "[e]very invoice in my office [being] based on a time sheet, just like any other law firm"; (3) "made at or near the time of the record"; and (4) made by "myself" and "kept in the ordinary course of business." "Business records of an attorney are admissible pursuant to Rule 803(6) to support attorney's fees." *Lesikar v. Moon*, No. 14-11-01016-CV, 2012 WL 3776365, at *7 (Tex. App.—Houston [14th Dist.]

9

Aug. 30, 2012, pet. denied) (mem. op.) (citing *Connor v. Wright*, 737 S.W.2d 42, 44 (Tex. App.—San Antonio 1987, no writ)). On this record, we hold that the trial court did not abuse its discretion by finding that Papaliodis's testimony coupled with the documents themselves met the requirements of Texas Rule of Evidence 803(6). We overrule Stavron's second issue.

### b. Sufficiency of the Evidence

Stavron next argues that, "[a]part from his billing records, Papaliodis provided no information as to the amount of time spent on discr[ete] tasks," and, therefore, the probate court had insufficient evidence to support its award of $37,712.50. Again, we disagree.

### (1) Standard of Review and Applicable Law

We review a trial court's award of attorney's fees for an abuse of discretion. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Such awards must be supported by sufficient evidence. *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 354 (Tex. 2020). In reviewing the evidence, we first note that findings of fact and conclusions of law were neither requested nor filed. In a bench trial in which no findings of fact or conclusions of law are filed, the trial court's judgment implies all findings of fact necessary to support it. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When a reporter's record is filed, these implied findings are not conclusive, and an appellant may challenge them by raising issues challenging the legal and factual sufficiency of the evidence to support the judgment. *Id.* We apply the

10

same standard when reviewing the sufficiency of the evidence to support implied findings that we use to review the evidentiary sufficiency of jury findings or a trial court's express findings of fact. *Id.*; *Liberty Mut. Ins. Co. v. Burk*, 295 S.W.3d 771, 777 (Tex. App.—Fort Worth 2009, no pet.). We must affirm the judgment if we can uphold it on any legal theory supported by the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766–67 (Tex. 2011); *Liberty Mut. Ins. Co.*, 295 S.W.3d at 777.

We may sustain a legal-sufficiency challenge—that is, a no-evidence challenge—only when (1) the record bears no evidence of a vital fact, (2) the rules of law or of evidence bar the court from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Shields Ltd. P'ship*, 526 S.W.3d at 480; *see also Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620 (Tex. 2014) (op. on reh'g); *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998) (op. on reh'g). In determining whether legally sufficient evidence supports the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and must disregard contrary evidence unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all the pertinent record evidence, we determine that the credible evidence supporting the

finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the finding should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

When seeking to recover attorney's fees, it is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* While contemporaneous billing records are not required to prove that requested fees are reasonable and necessary, they are valuable as a basis for testifying as to the reasonableness and necessity of the requested fees. *Id.* at 502. This lodestar method of proof is the "starting point" for an attorney's fee calculation. *Id.* at 498. This base can be adjusted up or down in a "second step" based on consideration of the relevant *Arthur Andersen* factors, to the extent those factors are not already taken into account for purposes of the "first step" or base calculation. *Id.* at 502 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997)).

12

## (2) Evidence Presented

Papaliodis testified that he attended Texas Wesleyan University School of Law, graduated in July 2003, and passed the bar in May 2004. Papaliodis explained that he had a general civil law practice specializing in probate and that Stavron, whom Papaliodis had known since childhood, contacted him shortly after Stavron's father's death because Stavron needed "help" dealing with "a whole number of highly irregular things" involving his father's death. According to Papaliodis, it was his understanding that Stavron was going to pay him individually "because [when he was first hired] there was no Estate, there was no envisioning that he was going to be an administrator." Papaliodis testified that, after he got Stavron appointed as administrator, "all Hell broke loose" and that he and Stavron "were fought tooth and nail every time [they] made a move."

Papaliodis also testified that he never had a written agreement with Stavron, and although he initially was going to charge $250 per hour, he "re-rated the bill to $175." Regarding his time, rate, and amount of attorney's fees and costs, Papaliodis stated, "I spent 436.9 hours of attorney time at $175 an hour - - became $76,457.50. I had client costs advanced, $459.97. And the total amount due was $76,917.47." In addition, he testified that his rate of $175 per hour was "well below the market," and he "charge[d] paralegal rates for attorney work." He also testified that "$175 [was] a reasonable paralegal rate."

13

He explained that he ultimately settled his suit with Shannon. While he could not remember the exact numbers, he thought "there was $27,000 as a Class 2B Claim, to be paid after [other attorneys'] bills [were] paid. And portions of, . . . another $25- or $28,000 as a Class 8 Claim." By the time of trial, he had not been paid by the estate, although the estate had not been "fully disbursed yet."

Papaliodis offered, and the probate court admitted, fifteen pages of billing records with 296 entries detailing the particular services that Papaliodis rendered from March 1, 2013, through March 11, 2014, and from August 28, 2014, through September 13, 2019. The billing records included (1) a detailed description of the legal services he provided, (2) a column identifying Papaliodis as the attorney who performed the services, (3) the dates on which the services were performed, (4) the amount of time he spent performing the services, and (5) the hourly rate charged for the services. According to his testimony, Papaliodis kept the records of his time in increments of one tenth of an hour.

Stavron's attorney cross-examined Papaliodis. He pointed out that Papaliodis had represented Stavron in other matters in which he had charged Stavron different rates. In addition, Papaliodis did not send an invoice to Stavron for approximately the first six months of his work. Stavron's attorney questioned Papaliodis about the details of his bills, including the fact that he billed 7.4 hours to the case one day, another 7.7 hours the next day, and 9.6 hours the following day. Papaliodis devoted this much time because, according to him, "This case basically shut my firm down for

14

awhile. I was turning away paying business to help [Stavron]." He testified that he segregated the entries on his bill "by that bucket of work." However, Papaliodis ultimately expected Stavron to pay him only what was reasonable and necessary for the work that he did. Finally, Papaliodis confirmed that his attorney's fees, according to the "Account for Final Settlement," represented the largest claim in the estate to that date.

### (3) Analysis

As set forth above, Papaliodis's testimony coupled with the billing records that were admitted into evidence show (1) the particular services performed, (2) who performed the services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for the attorney who performed the services. *See Rohrmoos*, 578 S.W.3d at 502. The evidence presented thus informed the trial court of the time spent on specific tasks and enabled the trial court to meaningfully review the requested fees. Taken together, the billing records and Papaliodis's testimony supply sufficient proof of the lodestar essentials described in *Rohrmoos*. *See id.* at 498; *see also Stavron v. SureTec Ins. Co.*, No. 02-19-00125-CV, 2019 WL 6768125, at *7 (Tex. App.—Fort Worth Dec. 12, 2019, no pet.) (mem. op.) (concluding that attorney affidavit and billing records provided sufficient evidence to support attorney's fees in related matter between Stavron and SureTec Insurance Company). We conclude that there is legally

15

and factually sufficient evidence to support the award of attorney's fees.[3] Thus, we overrule Stavron's third issue.

## B. Papaliodis's Cross-Appeal Issues

### 1. Award of Less Than Requested Attorney's Fees

In the first of his cross-appeal issues,[4] Papaliodis complains that the trial court erred by awarding less than $76,917.47, which is the full amount of attorney's fees that he requested. We disagree.

While Papaliodis testified regarding his attorney's fees and admitted billing records of his fees, Stavron disputed both the reasonableness and the necessity of the fees. Further, Stavron testified at trial that he never agreed to personally pay for any of Papaliodis's attorney's fees: "[Papaliodis] repeatedly told me, over and over, on multiple occasions, that all fees incurred on behalf of the temporary administrator would be paid for by the Estate, and that I would never be personally liable for any of those fees." Stavron also testified that, in addition to having "absolutely no written fee agreement, ever, at all, related to this case," the fee was "too much" and "absolutely asinine."

Papaliodis argues that the "Account for Final Settlement" that was signed by Stavron "conclusively established [Stavron's] liability and the amount of that liability."

___

[3]Stavron challenges only the award of any amount as attorney's fees. He does not challenge the total awarded as excessive.

[4]Stavron did not file a brief in response to the issues raised in the cross-appeal.

16

Therefore, Papaliodis contends that any contrary evidence is barred under the doctrines of judicial admission and judicial estoppel.

A judicial admission is "a formal waiver of proof usually found in pleadings or the stipulations of the parties." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). "A judicial admission is conclusive upon the party making it, and it relieves the opposing party's burden of proving the admitted fact, and bars the admitting party from disputing it." *Id.* (citing *Gevinson v. Manhattan Constr. Co. of Okla.*, 449 S.W.2d 458, 467 (Tex. 1969)). For a judicial admission to exist and be conclusive against a party, it must be shown (1) that the declaration relied on was made during the course of a judicial proceeding; (2) that the statement is contrary to an essential fact embraced in the theory of recovery or defense asserted by the person giving the testimony; (3) that the statement was deliberate, clear, and unequivocal; (4) that giving conclusive effect to the declaration will be consistent with public policy; and (5) that the testimony must be such as relates to a fact upon which a judgment for the opposing party may be based. *Griffin v. Superior Ins. Co.*, 338 S.W.2d 415, 419 (Tex. 1960).

Judicial estoppel is based on inconsistency in judicial proceedings. *Balaban v. Balaban*, 712 S.W.2d 775, 777 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.). Under the doctrine, a party is estopped from taking a position contrary to one alleged or admitted in his pleadings in a former proceeding under oath. *Id.* (citing *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956)).

Central to both judicial admission and judicial estoppel is a statement contrary to a party's current position. Here, there is none. While Stavron did sign the "Account for Final Settlement," the document did not state that Stavron individually owed the money, which was one of the points in dispute at trial. Rather, it said, "The following debts and expenses of the estate have not been paid and are presently due and owed by the Estate: Attorney's fees and court costs advanced by Louis Pap[a]liodis (fee application to be filed) $76,917.47." At trial, Papaliodis disputed that he would look only to the Estate for payment of his fees: "[T]he proposition that I would agree to be paid by the Estate is laughable. Because in a contested probate it's hard to believe that the judge would say these fees are all reasonable and necessary; they're for the broader management, preservation and safekeeping of the Estate. . . ."

It was ultimately up to the trial court to decide who was responsible for the attorney's fees. And since the "Account for Final Settlement" was not contrary to the position Stavron took at trial, we hold that it fails to establish the requisite elements of either judicial estoppel or judicial admission.

In addition to determining who was responsible for the attorney's fees, the trial court was charged with determining the reasonable amount of fees to award. A trial court is not "a mere rubber stamp or bean-counter; even when evidence of attorney's fees is uncontroverted, a trial court is not obligated to award the requested amount." *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *18 (Tex. App.— Fort Worth Dec. 3, 2020, pet. denied) (en banc op. on reh'g). The trial court, in its

18

role as factfinder, was entitled to evaluate the complexity and necessity of the legal services in light of the $76,917.47 requested. *See Pro-Care Med. Ctr. and Injury Med. Grp. v. Quality Carriers, Inc.*, No. 14-18-01062-CV, 2020 WL 1617116, at *3 (Tex. App.—Houston [14th Dist.] Apr. 2, 2020, no pet.) (mem. op.). And as part of its exercise of discretion, the court could "consider the entire record and common knowledge of the participants as lawyers and judges in making its determination." *Mogged*, 2020 WL 7074390, at *18 (citing *In re A.M.*, No. 02-18-00412-CV, 2020 WL 3987578, at *4 (Tex. App.—Fort Worth June 4, 2020, no pet.) (mem. op.)).

Consideration of the entire record includes the settlement entered into with Shannon. Prior to trial, Papaliodis settled his claim against Shannon by entering into a compromise settlement agreement wherein Shannon agreed to approve Papaliodis's claim in the amount of $27,000.00 in attorney's fees and $459.97 in expenses as a class 2 claim and his claim in the amount of $23,000.00 as a class 8 claim, subject to the approval of the probate court. As stated above, Papaliodis also testified about this settlement.

In his closing argument, Stavron's attorney requested the probate court to make an award close to what was granted: "And I think that $35,000 dollars is more than reasonable, and more than enough. I'd ask the Court to render judgment against [Stavron], as former temporary administrator, in the amount of no more than $35,000 dollars." Papaliodis never attempted to segregate the attorney's fees recoverable against the estate from those recoverable against Stavron individually.

19

Ultimately, because findings of fact and conclusions of law were neither filed nor requested in this case, we have no way to ascertain the trial court's reasoning. *See Protect Env't Servs., Inc. v. Norco Corp.*, 403 S.W.3d 532, 543 (Tex. App.—El Paso 2013, pet. denied) (finding that, in the absence of findings of fact and conclusions of law, the trial court did not abuse its discretion by reducing the amount of requested attorney's fees despite uncontroverted testimony). And, as noted above, if findings of fact and conclusions of law are neither filed nor requested, the judgment of the trial court implies all necessary findings to support it. *See id.* Therefore, the judgment in this case implies that the trial court found the total attorney's fees testified by Papaliodis in some way to be unreasonable or not assessable against Stavron individually. *See id.* Given the scope of the evidence, we conclude that the trial court did not abuse its discretion by awarding $37,712.50 in attorney's fees because Papaliodis did not conclusively prove he was entitled to recover the entire $76,917.47 from Stavron individually. We overrule Papaliodis's first cross-issue.

## 2. Prejudgment Interest

In his second cross-issue, Papaliodis argues that the probate court erred by not awarding prejudgment interest on the principal amount in controversy. He asserts that he has been deprived of the use of the money that he is owed and, therefore, is entitled to prejudgment interest. However, Papaliodis failed to raise this issue with the probate court, and he cites no controlling authority to support his argument.

A party should file a motion to modify the judgment or complain in the trial court of the failure to award prejudgment interest. *Larrumbide v. Doctors Health Facilities*, 734 S.W.2d 685, 693 (Tex. App.—Dallas 1987, writ denied) ("[W]e hold that, by failing to request an award of prejudgment interest in their motion for judgment, or to complain in the trial court of the failure to award prejudgment interest, the Larrumbides waived any error."); *see Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987) (holding that plaintiff, who did not complain to the trial court of its failure to award prejudgment interest nor assign a point of error or crosspoint in the court of appeals, waived any claim for prejudgment interest). By failing to complain to the probate court of its failure to award prejudgment interest, Papaliodis waived this cross-issue.[5] We overrule Papaliodis's second cross-issue.

### 3. Attorney's Fees for Collection Efforts

In his third cross-issue, Papaliodis contends that the probate court erred by not awarding attorney's fees for his "having to file suit to collect his contractual damages." While Papaliodis asserts that he was not awarded attorney's fees for "costs of collection," the judgment did not segregate or allocate the fees in any manner; it simply awarded $37,712.50. Without findings of fact, we are unable to ascertain

---

[5]In any event, prejudgment interest is generally not allowed on an award of attorney's fees. *See C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325 (Tex. 1994), *abrogated in part on other grounds by Battaglia v. Alexander*, 177 S.W.3d 893 (Tex. 2005); *Alma Invs. v. Bahia Mar Co-Owners Ass'n*, 497 S.W.3d 137, 146 (Tex. App.—Corpus Christi 2016, pet. denied); *Williams v. Colthurst*, 253 S.W.3d 353, 362 (Tex. App.—Eastland 2008, no pet.).

whether or not the probate court awarded attorney's fees for "costs of collection." *See Pharo v. Chambers Cnty.*, 922 S.W.2d 945, 948 (Tex. 1996) ("Because the trial court did not render findings of fact or conclusions of law, we must assume that it made all findings in support of its judgment . . . ."). We overrule Papaliodis's third cross-issue.

### 4. Finality of Judgment

In his fourth cross-issue, Papaliodis asserts that the probate court failed to dispose of all parties and all causes of action because it did not address his request for declaratory relief. In five sentences under his final cross-issue, he contends that he remains "befuddled" as to "what effect, if any, the August 29, 2014 Settlement Agreement, entered into by [ ] Stavron, the [ ] Estate and the proponent of the 2013 Will, have on his contractual and other claims against Stavron individually." We disagree.

The judgment followed a conventional trial on the merits and recited that it "finally disposes of all claims and all parties, and is appealable." Under the *Aldridge* presumption, any judgment following a conventional trial on the merits creates a presumption that the judgment is final for purposes of appeal. *Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) (citing *Ne. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966)). Such a judgment need not dispose of every party and claim for the presumption to apply. *Id.* We overrule Papaliodis's fourth cross-issue.[6]

---

[6]We also note that Papaliodis failed to raise his concern regarding his claim for declaratory relief with the probate court by filing a post-judgment motion. And to the

## IV. Conclusion

Having overruled all of the issues raised by Stavron and the cross-issues raised by Papaliodis, we affirm the trial court's judgment.

/s/ Dana Womack

Dana Womack
Justice

Delivered: November 10, 2021

---

extent he is complaining about the denial of declaratory relief, Papaliodis's appellate brief fails to offer any legal analysis or to cite any authorities. As such, he presents nothing for us to review. *See* Tex. R. App. P. 38.1(h); *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.) ("Our appellate rules require an appellant's brief to contain a clear and concise argument for the contentions made with appropriate citations to authorities and the record."); *Long v. Sw. Funding, L.P.*, No. 03-15-00020-CV; 2017 WL 672445, at *3 n.5 (Tex. App.—Austin Feb. 16, 2017, no pet.) (mem. op.) ("In his petition, Long also sought declaratory relief. . . . On appeal, Long does not address his declaratory-judgment claims in any way and has therefore waived appellate review of the trial court's resolution of these claims.").